**UNITED STATES of America**

v.

**Thomas P. GILLESPIE, Jr.**

**No. HCR 90–89.**

United States District Court,
N.D. Indiana,
Hammond Division.

April 25, 1991.

Patrick Hansen, Asst. U.S. Atty., Dyer, Ind., for plaintiff.

Robert L. Lewis and Hilbert Bradley, Gary, Ind., for defendant.

## OPINION OF THE COURT

MOODY, District Judge.

This matter is before the court on the defendant's (1) "Joint Motion to Dismiss Indictment,"[1] filed December 24, 1990, and (2) "Motion to Suppress and Reject Evidence," filed April 5, 1991. On April 16, 1991, the court entered a summary order denying both motions and deferring its opinion so that trial might proceed as scheduled on April 18, 1991. The court now addresses the merits of the defendant's motions in detail.

## I. BACKGROUND

On October 14, 1988, the defendant honored a government subpoena by appearing to testify and present documents to a federal grand jury. The grand jury was investigating certain contracts involving the City of Gary, Indiana. The investigation focused especially on the municipality's relationship with Inner City Leasing and Trucking Company through the defendant's business, Gillespie Ford, Incorporated. At some time during the defendant's testimony to the grand jury, the government came to suspect that he had derived unreported taxable income from his participation in municipal contracts on behalf of Inner City. Thus, during the defendant's testimony, he became a likely defendant (a "target") in the government's eyes.

When the defendant appeared before the grand jury, he was not orally warned of his constitutional right against self-incrimination. Nor was the defendant advised at any time that he had become a target of the grand jury.

The government has asserted, however, that the defendant did receive an effective written warning of his rights, which was

1. As the court has previously noted, the motion is joint only insofar as both defense cousel signed it; the government vigorously opposes the motion.

attached to the grand jury subpoena. The court devoted its evidentiary hearing of April 15, 1991, to the factual question of whether the defendant was effectively advised of his rights in writing. The evidence at the hearing was inconclusive.[2]

The defendant now stands charged with two counts of underreporting income on his federal tax return, 26 U.S.C. § 7206(1), and one count of obstructing justice by misleading the grand jury about his income, 18 U.S.C. § 1503. The motions before the court seek dismissal of the two tax counts and suppression of the defendant's October 14, 1988, testimony before the grand jury.

## II. ANALYSIS

■ The defendant relies on a constitutional theory. Specifically, the defendant claims that he had a constitutional right to receive both a *Miranda*-type advice of rights and a warning that he was a target of the grand jury's investigation.[3] The defendant's *Miranda* argument is rooted in the fifth amendment, and the defendant does not claim that the government violated his sixth amendment rights.

■ Initially, the court must settle the factual record. As the court has previously noted, it is a venerable principle of constitutional law that a court should not pass on an unsettled constitutional issue unless absolutely necessary in the case before it. *E.g. Burton v. United States*, 196 U.S. 283, 295, 25 S.Ct. 243, 245, 49 L.Ed. 482 (1905) ("It is not the habit of the Court to decide questions of a constitutional nature unless absolutely necessary to a decision of the case.") In this case, the court need not pass on the defendant's *Miranda* theory if the government actually provided the advice of rights he propounds. However, if the advice of rights was not given, then the court has no alternative but to rule on the constitutional issue.

■ As noted above, the evidence at the court's hearing was inconclusive on the factual issue of whether the government provided an effective advice of rights. The court reasons that if there is a constitutional right to *Miranda* warnings in the grand jury context, then the government would bear the burden of showing that it gave the warnings. *See United States v. Yong Bing–Gong*, 594 F.Supp. 248, 256 (N.D.N.Y.1984), *aff'd* 788 F.2d 4 (2d Cir. 1986), *cert. denied* 479 U.S. 818, 107 S.Ct. 78, 93 L.Ed.2d 33 (1986). On this record, the government has not carried its hypothetical burden. The court FINDS, for present purposes, that the defendant was not effectively warned of his rights. Ac-

---

**2.** The defendant took the stand and stated that he never read or received a written advice of rights form. (A peculiar turn of events given the defendant's reference to the form on the first page of his "Joint Motion to Dismiss Indictment.") The government presented testimony of Special Agent John Spalding of the Internal Revenue Service, who served the government's subpoena. Agent Spalding supported the government's contention that an advice of rights form was attached to the defendant's subpoena, but admitted that he never saw the defendant read the form. It is undisputed that Agent Spalding did not discuss the defendant's rights with the defendant.

**3.** The court, like the parties, refers to the advice of rights propounded by the defendant as a *"Miranda"* warning. Strictly speaking, the warnings required by *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), are not at issue. *Miranda* held, "Prior to any questioning, the person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has the right to the presence of an attorney, either retained or appointed." *Id.*

at 444, 86 S.Ct. at 1612. The usual witness before the grand jury, of course, may not remain silent without asserting a privilege, and has no recognized federal rights to counsel in the grand jury room or to appointed counsel. *See United States v. Mandujano*, 425 U.S. 564, 580–81, 96 S.Ct. 1768, 1778–79, 48 L.Ed.2d 212 (1976) (plurality) (explaining limits on right to remain silent); BEALE & BRYSON, GRAND JURY LAW AND PRACTICE, §§ 6.15–.19 (1986 & Supp.1990) (on issues of right to counsel). Accordingly, the warnings at issue are necessarily different. Assuming warnings are required, proper warnings might include advice that: the witness may refuse to answer incriminating questions; incriminating answers may be used against the witness; and the witness may consult with retained counsel outside the grand jury room. *See Mandujano*, 425 U.S. at 581, 96 S.Ct. at 1778–79 (approving practice of allowing witness to confer with counsel outside grand jury room). *See also United States Attorney's Manual* § 9–11.150 (1988) (adopting these warnings as executive branch policy).

cordingly, the court must reach the issue of *Miranda* warnings in the grand jury context.

The court will address the defendant's constitutional theory in two stages corresponding to the relief requested by the two motions. The court first addresses the motion for dismissal of the tax counts of the indictment. Here the court assumes, *arguendo*, that the defendant was constitutionally entitled to warnings, but concludes that dismissal is not necessary even under that assumption. The court then addresses the motion for suppression of evidence, examining the government's conduct under the fifth amendment, and concluding that there is no constitutional right to *Miranda* warnings in the grand jury context.

A. Motion to Dismiss Indictment

■ The defendant's motion to dismiss has requested only that the court dismiss the tax counts of his indictment. The well settled point of law controlling such motions states: "An indictment returned by a legally constituted and unbiased grand jury, like an information by the prosecutor, if valid on its face, is enough to call for a trial of the charge on the merits." *Costello v. United States*, 350 U.S. 359, 363, 76 S.Ct. 406, 409, 100 L.Ed. 397 (1956) (holding that an indictment may properly arise from hearsay evidence alone). As a corollary to *Costello*, the Supreme Court has made it clear that even illegally obtained evidence may support an indictment and call for a trial on the merits. *United States v. Calandra*, 414 U.S. 338, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974) (grand jury may consider testimonial fruit of unconstitutional search).

Applying *Costello*, which neither the defendant nor the government briefed or argued, the court cannot grant the requested relief. The indictment is plainly valid on its face. Further, this is not a case such as that presented in *Vasquez v. Hillery*, 474 U.S. 254, 106 S.Ct. 617, 88 L.Ed.2d 598 (1986), where a convicted black murderer contested the exclusion of blacks from the grand jury that indicted him. The Supreme Court overturned Hillery's murder conviction because of this illegal flaw in the state grand jury's composition. Nothing in the current defendant's motion, supporting brief, or oral argument, however, supports any inference that his grand jury was illegally constituted or biased in this manner.

*Calandra* also dooms the defendant's motion to dismiss the indictment. The defendant apparently argues that the government obtained his testimony to the grand jury in violation of the Constitution, thus tainting the grand jury's indictment decision. Under *Calandra*, however, the grand jury may consider illegally obtained evidence in its investigation. Accordingly, even if the government violated the defendant's fifth amendment rights, on this record the government would remain entitled to a trial on the merits. *See also United States v. Burke*, 781 F.2d 1234, 1245 (7th Cir.1985) (Easterbrook, J.) ("[W]arnings have nothing to do with the validity of indictments.").

Nevertheless, the court is aware of one reported case in this circuit that ignored *Costello* to grant a very similar defense motion. In *United States v. Kreps*, 349 F.Supp. 1049 (W.D.Wis.1972) (Doyle, J.), which neither the government nor the defendant has briefed or discussed, three defendants moved to dismiss the indictment against them. Reasoning under *Miranda*, the *Kreps* court held that grand jury targets are constitutionally entitled to warnings of their rights and their status as targets. The court then dismissed the indictment of one defendant because he had testified without warnings before a grand jury that had targeted him for indictment.

The *Kreps* holding was a rational and considered approach to grand jury and fifth amendment procedure.[4] However, this court is constrained to disagree with the *Kreps* decision. Even assuming there is a constitutional right to warnings, *Costello* and *Calandra* show it would be unnecessary to dismiss an indictment even where those rights are violated and the fruits of

---

**4.** The court notes that while *Costello* had long been controlling at the time of the *Kreps* decision, the Supreme Court had not yet decided *Calandra*.

the violations are presented to the grand jury.

Thus, the court denies the defendant's "Joint Motion to Dismiss Indictment." *Costello* and *Calandra,* however, are cases about the grand jury and the indictment process. They do not apply to the trial process and the admissibility of evidence before the petit jury. The court now turns to the issue of what evidence the petit jury may properly hear, given the propriety of a trial on the indictment.

### B. Motion to Suppress Evidence

In addressing the defendant's motion to dismiss, the court assumed that there is a constitutional right to an advice of rights and to target warnings in the grand jury context. In turning to the defendant's motion to suppress his grand jury testimony, however, that assumption is withdrawn. The court finds itself squarely confronted with the issue of whether *Miranda* or target warnings are required.

■ The question of target warnings need not detain the court. It is well settled that target warnings are not constitutionally required. In *United States v. Washington,* 431 U.S. 181, 97 S.Ct. 1814, 52 L.Ed.2d 238 (1977), the Supreme Court held that a target had no right to a warning of his status: "Because target witness status neither enlarges nor diminishes the constitutional protection against compelled self-incrimination, potential-defendant warnings add nothing of value to protection of fifth amendment rights." *Id.* at 189, 97 S.Ct. at 1820. *See also Burke,* 781 F.2d at 1245 (no target warnings required). The court is at a loss to understand why the defendant has pressed an argument that target warnings are constitutionally significant.

The *Washington* Court, however, did not pass on the question of whether *Miranda* warnings are required for grand jury witnesses: "Since warnings were given, we are not called upon to decide whether such warnings were constitutionally required." *Id.* at 431 U.S. at 190, 97 S.Ct. at 1820. Similarly, in *United States v. Mandujano,* 425 U.S. 564, 581 n. 7, 96 S.Ct. 1768, 1779 n. 7, 48 L.Ed.2d 212 (1976) (plurality), the Supreme Court had previously declined the

government's specific invitation to resolve the *Miranda* issue. The continuing uncertainty over this issue was more recently noted by the Seventh Circuit. *Burke,* 781 F.2d at 1245 (*Mandujano* "did not conclusively determine when witnesses should be given Miranda warnings").

The court's research has revealed few federal decisions on point. There is, however, a simple reason for the dearth of federal decisions on *Miranda* warnings for grand jury witnesses. The Department of Justice has made it an internal policy of the executive branch to provide such warnings whether they are required or not. *United States Attorney's Manual* § 9–11.150 (1988). Given the generally high calibre performance of attorneys for the United States, this policy has been infrequently violated. When it has been violated, the courts have striven to avoid the constitutional issue, and have then turned to their inherent supervisory power as a means of assuring consistent implementation of the government's policy. *See, e.g., United States v. Pacheco–Ortiz,* 889 F.2d 301, 307–313 (1st Cir.1989). In this case, however, warnings were not given, and the court ultimately sees no means of avoiding a constitutional decision.

■ There are two parts to the court's analysis of the *Miranda* issue. First, the court addresses the issue of unwarned grand jury testimony used at trial to establish obstruction of the grand jury under 18 U.S.C. § 1503. Second, the court addresses the issue of unwarned grand jury testimony used at trial to establish tax evasion under 26 U.S.C. § 7206(1). In the former analysis, the court can continue to avoid the *Miranda* issue, but in the latter discussion the court must rule on the defendant's constitutional theory.

With reference to the obstruction of justice count, the court holds that whether or not there is a right to *Miranda* warnings in the grand jury context, there is no need to suppress unwarned testimony that is evidence of obstruction of the grand jury. The court relies on the extensive body of precedent showing that unwarned testimo-

nial evidence of perjury will not be suppressed at a subsequent perjury trial, even if there is a constitutional right to warnings. For example, in *United States v. Wong*, 431 U.S. 174, 97 S.Ct. 1823, 52 L.Ed.2d 231 (1977), the government indicted the defendant for perjury before a federal grand jury. The defendant persuaded the district court to suppress evidence of the perjury because she was not effectively warned of her right against self-incrimination. The Supreme Court reversed. The Court explained:

> [T]o characterize these [grand jury] proceedings as unfair by virtue of inadequate Fifth Amendment warnings is essentially to say that the Government acted unfairly or oppressively by asking searching questions of a witness uninformed of the privilege. But as the Court has consistently held, perjury is not a permissible way of objecting to the Government's questions. "Our legal system provides methods for challenging the Government's right to ask questions—lying is not one of them."

*Id.* at 431 U.S. at 180, 97 S.Ct. at 1827 (citations omitted). In other words, evidence of perjury will not be suppressed even if *Miranda* warnings are required in the grand jury context.

The defendant might attempt to distinguish this action from *Wong* because the indictment in that case charged perjury rather than obstruction of justice. But where the indictment and Bill of Particulars bind the government to prove obstruction of justice by showing false or misleading statements to the grand jury, as they do in this case, such a distinction would contain far more of form than of substance.

■ Thus, it is not necessary to suppress the defendant's unwarned grand jury testimony as offered to prove obstruction of justice. However, the use of unwarned grand jury testimony to prove tax evasion is another matter entirely. The perjury precedents have no application to this issue.

At the heart of the defendant's *Miranda* theory is, of course, the scope of *Miranda*

itself. The issue now before the court is whether to extend *Miranda* to the grand jury context by requiring self-incrimination and modified right to counsel warnings for grand jury witnesses. Specifically, the issue is whether the grand jury is institutionally so similar to custodial police interrogation that the grand jury may be deemed an "inherently coercive" environment requiring special protections for those who appear before it. *See Miranda*, 384 U.S. at 445, 86 S.Ct. at 1612 ("An understanding of the nature and setting of this in-custody interrogation is essential to our decisions today."). This issue is not easily resolved, but the court concludes that the prophylactic *Miranda* rule does not extend to the grand jury context.

Turning first to the precedent supporting the court's conclusion, the Supreme Court has provided lower courts with strong indications that it would not extend *Miranda* to the grand jury context. Most recently, in *Minnesota v. Murphy*, 465 U.S. 420, 104 S.Ct. 1136, 79 L.Ed.2d 409 (1984), a majority of the Court held that a probationer was not entitled to *Miranda* warnings in the context of questioning by his probation officer. In reaching its holding, the Court reiterated prior guidance on the proper scope of *Miranda's* application:

> The Minnesota Supreme Court recognized that Murphy was not "in custody" when he made his incriminating admissions. He was, to be sure, subject to a number of restrictive conditions governing various aspects of his life, and he would be regarded as "in custody" for purposes of federal habeas corpus. *See Jones v. Cunningham*, 371 U.S. 236, 241–243, 83 S.Ct. 373, 376–377, 9 L.Ed.2d 285 (1963). But custody in that context has been defined broadly to effectuate the purposes of the writ, *id.* at 243, 83 S.Ct. at 377; *Hensley v. Municipal Court*, 411 U.S. 345, 349–351, 93 S.Ct. 1571, 1573–1575, 36 L.Ed.2d 294 (1973), and custody for *Miranda* purposes has been more narrowly circumscribed. *See Oregon v. Mathiason*, 429 U.S. 492, 97 S.Ct. 711, 50 L.Ed.2d 714 (1977) (*per curiam*). Under the narrower standard

appropriate in the *Miranda* context, it is clear that Murphy was not "in custody" for purposes of receiving *Miranda* protection since there was no " 'formal arrest or restraint on freedom of movement' of the degree associated with a formal arrest." *California v. Beheler,* 463 U.S. 1121, 1125, 103 S.Ct. 3517, 3520, 77 L.Ed.2d 1275 (1983) *(per curiam )* (quoting *Oregon v. Mathiason, supra,* 429 U.S. at 495, 97 S.Ct. at 714).

In applying this narrowing approach to the construction of *Miranda,* the *Murphy* Court repeatedly compared the probationer's situation to that of a grand jury witness. *Id.* at 427, 431, 432, 104 S.Ct. at 1142, 1144, 1144–1145. For example, the Court reasoned:

> Although warnings in both contexts might serve to dissipate "any possible coercion or unfairness resulting from a witness' misimpression that he must answer truthfully even questions with incriminat[ing] aspects," we have never held that they must be given to grand jury witnesses, and we decline to require them here since the totality of the circumstances is not such as to overbear a probationer's free will....
>
> In any event, Murphy's situation was [regarding an expectation of incriminating questions] indistinguishable from that facing suspects who are questioned in noncustodial settings and grand jury witnesses who are unaware of the scope of an investigation or that they are considered potential defendants.

*Id.* at 431–32, 104 S.Ct. at 1144–1145 (citations omitted). The Court also held, "The mere fact that an investigation has focused on a suspect does not trigger the need for *Miranda* warnings in non-custodial settings...." *Id.* at 431, 104 S.Ct. at 1144.

The *Murphy* Court's analysis is echoed and amplified by the Seventh Circuit's opinion in *United States v. Jackson,* 836 F.2d 324 (7th Cir.1987) (Ripple, J.). In *Jackson,* the court held that no *Miranda* warnings are required for a witness in bankruptcy proceedings. Specifically, no *Miranda* warnings are required at either a Bankruptcy Rule 2004 hearing, or an adversary bankruptcy hearing on dischargeability. The court provided a concise discussion of the controlling principle:

> The holding of the Supreme Court in *Miranda* applies only—by the explicit language of *Miranda* itself—to a custodial interrogation in a criminal investigation:
>
> > The principles announced today deal with the protection which must be given to the privilege against self-incrimination when the individual is first subject to police interrogation while in custody at the station or otherwise deprived of his freedom of action in any significant way. It is at this point that our adversary system of criminal proceedings commences, distinguishing itself at the outset from the inquisitorial system recognized in some countries. Under the system of warnings we delineate today or under any other system which may be derived and found effective, the safeguards to be erected about the privilege must come into play at this point.
>
> *Miranda,* 384 U.S. at 477, 86 S.Ct. at 1629. In subsequent cases, the Supreme Court has firmly and unequivocally adhered to this limitation on the scope of *Miranda.*

*Jackson,* 836 F.2d at 326–27 (collecting cases). The *Jackson* court went on to hold, "The obligation of a [lower] court is to follow, not contract or expand, Supreme Court precedent." Applying *Miranda* under this principle, the Seventh Circuit declined to require prophylactic warnings in the context of bankruptcy proceedings.

Earlier in the reports, the *Mandujano* Court had declined to hold on the issue of *Miranda* warnings for grand jury witnesses. But the plurality did provide a lengthy and compelling dictum, which informs this court's decision:

> The court's analysis, premised upon the prosecutor's failure to give *Miranda* warnings, erroneously applied the standards fashioned by this Court in *Miranda.* Those warnings were aimed at the evils seen by the Court as endemic to police interrogation of a person in custo-

dy. *Miranda* addressed extrajudicial confessions or admissions procured in a hostile, unfamiliar environment which lacked procedural safeguards. The decision expressly rested on the privilege against self-incrimination; the prescribed warnings sought to negate the "compulsion" thought to be inherent in police station interrogation. But the *Miranda* Court simply did not perceive judicial inquiries and custodial interrogation as equivalents: "[T]he compulsion to speak in the isolated setting of the police station may well be greater than in courts or other official investigations, where there are often impartial observers to guard against intimidation or trickery." 384 U.S., at 461, 86 S.Ct., at 1627, 16 L.Ed.2d, at 716.

The Court thus recognized that many official investigations, such as grand jury questioning, take place in a setting wholly different from custodial police interrogation. Indeed, the Court's opinion in *Miranda* reveals a focus on what was seen by the Court as police "coercion" derived from "factual studies [relating to] police violence and the 'third degree'.... physical brutality—beating, hanging, whipping—and to sustained and protracted questioning incommunicado in order to extort confessions...." *Id.,* at 445–446, 86 S.Ct., at 1613, 16 L.Ed.2d, at 707. To extend these concepts to questioning before a grand jury inquiring into criminal activity under the guidance of a judge is an extravagant expansion never remotely contemplated by this Court in *Miranda;* the dynamics of constitutional interpretation do not compel constant extension of every doctrine announced by the Court.

The marked contrasts between a grand jury investigation and custodial interrogation have been commented on by the Court from time to time. Mr. Justice Marshall observed that the broad coercive powers of a grand jury are justified, because "in contrast to the police—it is not likely that [the grand jury] will abuse those powers," *United States v. Mara,* 410 U.S. 19, 46, 93 S.Ct. 774, 788, 35 L.Ed.2d 99, 95 (1973) (dissenting opinion). *See also In re Graban,* 352 U.S. 330, 347, 77 S.Ct. 510, 520, 1 L.Ed.2d 376, 388 (1967) (Black, J., dissenting).

*Mandujano,* 425 U.S. at 578–582, 96 S.Ct. at 1777–1779 (footnotes omitted). *See generally* BEALE & BRYSON, GRAND JURY LAW AND PRACTICE, §§ 6.15 at n. 3 (1986 & Supp.1990); LAFAVE & ISRAEL, 1 CRIMINAL PROCEDURE § 8.10(d) (1984 & Supp.1991); DIAMOND, FEDERAL GRAND JURY LAW & PRACTICE, § 8.01 (1990).

The court turns now to the precedent against its ruling. The court is aware of two contrary holdings in this circuit, neither of which were even cited, much less argued, by counsel. First, in 1972, the *Kreps* district court confronted the very issue before this court, holding:

> [O]ne as to whom criminal proceedings have become accusatory is entitled to some measure of protection of his privilege against self-incrimination when he appears before a grand jury.... It would be a simple prophylactic rule, easily complied with, that before grand jury testimony is elicited from [a target], the *Miranda* warnings be given.

*Kreps,* 349 F.Supp. at 1052–53. To support its holding, the court reasoned:

> I cannot say that to receive such a warning would be a small matter to one brought before a grand jury. The circumstances are totally one sided; only the prosecutor is present with the witness and the grand jury. Even when one counsel is available outside the grand jury room, he and his client cannot fully anticipate the directions which the interrogation may take.

*Id.* at 1053.

*Kreps* relied on the second case, *United States v. DiGrazia,* 213 F.Supp. 232 (N.D.Ill.1963) (Will, J.), a pre-*Miranda* decision that also holds warnings are necessary. Specifically, the *DiGrazia* court held:

> Under all the circumstances, it would seem desirable to establish the rule that, except as to perjury indictments arising out of testimony before the Grand Jury, no individual who is not warned of his privilege against self-incrimination and executes a formal waiver either upon advice of counsel or after declining such

advice, may subsequently be indicted for an offense about which he was questioned before the Grand Jury.

*Id.* at 232.

Beyond contrary holdings, the court is also aware of contrary dicta. The defendant cites *United States v. Nickels,* 502 F.2d 1173 (7th Cir.1974) (Cummings, J.), *cert. denied* 426 U.S. 911, 96 S.Ct. 2237, 48 L.Ed.2d 837 (1976), in favor of warnings. In *Nickels,* the convicted defendant argued that the government failed to adequately warn him of his right to counsel before his grand jury testimony. The Seventh Circuit addressed and rejected this argument in one brief sentence, concluding "the colloquy between the defendant and the prosecutor before the grand jury shows that defendant was adequately informed about that right." In one case, and only one case, *Nickels* has been read by a separate opinion to imply that *Miranda* warnings are required for grand jury targets. *United States v. Mandujano,* 425 U.S. 564, 598 n. 16, 96 S.Ct. 1768, 1787 n. 16 (Brennan, J., concurring in the judgment). However, *Nickels* may also be read to state nothing about the issue, or at most a mere dictum, because the facts plainly did not require the court to rule on this point of law. *Accord Washington,* 431 U.S. at 186, 97 S.Ct. at 1818 (finding the issue unresolved and declining to address it because facts showed adequate warnings); *Mandujano,* 425 U.S. at 582 n. 7, 96 S.Ct. at 1779 n. 7 (plurality opinion refusing government's request to rule on warnings issue because facts presented adequate warnings).

A similar dictum occurs in *Burke.* In *Burke,* the court based the relevant part of its decision on the procedural context of a motion to dismiss the indictment. In holding that an indictment need not be dismissed for lack of *Miranda* warnings before the grand jury, the court stated: "Statements taken in violation of *Miranda* may be suppressed; the absence of warnings does not taint the indictment. None

of Burke's testimony before the grand jury was introduced at trial, so he has no claim under *Miranda." Burke,* 781 F.2d at 1245.

Further, the defendant cites an Indiana Supreme Court case. In *State ex. rel. Pollard v. Criminal Court of Marion County,* 329 N.E.2d 573, 587–90 (Ind.1975), that court held that both the United States Constitution and the Indiana Constitution require warnings for grand jury witnesses.

Having surveyed the law, the court is persuaded that *Miranda* has no more application in the grand jury context than it does in the probation interview or bankruptcy contexts analyzed in *Murphy* and *Jackson* respectively. A witness before the grand jury, whether a target or not, is not "in custody" under *Miranda.*

The court acknowledges that the grand jury has intimidating qualities, especially for those acquainted with its uses. As Judge Campbell wrote in 1973, "Today, the grand jury is the total captive of the prosecutor who, if he is candid, will concede that he can indict anybody at any time, for almost anything, before any grand jury." [5] Further, as Judge Doyle accurately noted in *Kreps,* the circumstances of a grand jury appearance are, to a very real extent, one-sided: the witness is confronted with a secret proceeding attended by, at most, himself, the grand jurors, the prosecutor, and a court reporter; counsel is not readily available, and will not be appointed before indictment.

Nevertheless, the grand jury is significantly different than the station house. The grand jury was undeniably designed as a barrier between the government and the citizenry, rather than a purely investigative body. The framers and ratifiers of the Bill of Rights approached their task with the recent revolutionary experience in mind. They were disposed to view the grand jury as an essential, protective barrier between the individual and political oppression by the central government. [6] Through the

---

**5.** Campbell, *Eliminate the Grand Jury,* 64 JOURN.CRIM.L. & CRIMINOLOGY 174 (1973).

**6.** One anti-federalist orator at the Massachusetts Ratifying Convention spoke at length against

the unamended Constitution's failure to guarantee grand jury screening.

These circumstances, as horrid as they are, are rendered still more dark and gloomy, as there is no provision made in the Constitu-

fifth amendment, they incorporated the grand jury into federal law as a constitutional right against the type of political overreaching so resented during the colonial period.[7] The framers intended a substantial and effective screening role for the federal grand jury, else they would not have enumerated it in the fifth amendment as a guarantee *against* federal power.[8] Recognizing this, the Supreme Court has regularly commented that the screening role is central to the institution of the grand jury.[9] Lower federal courts have been similarly effusive in their recognition of the shielding function of the grand jury.[10]

Whatever, the practical effect of the modern grand jury as a screening device, it is institutionally far removed from the atmosphere of the police house and its unfortunate tradition of violence and intimidation. *See generally Miranda*, 384 U.S. at 445–46, 86 S.Ct. at 1612–13 (chronicling

tion to prevent the attorney general from filing information against any person, whether he is indicted by the grand jury or not; in consequence of which the most innocent person in the commonwealth may be taken by virtue of a warrant issued in consequence of such information, and dragged from his home, his friends, his acquaintance, and confined in prison, until the next session of court, which has jurisdiction of the crime with which he is charged, (and how frequent those sessions are to be we are not yet informed of,) and after long, tedious, and painful imprisonment, though acquitted on trial, may have no possibility to obtain any kind of satisfaction for the loss of his liberty, the loss of his time, great expenses, and perhaps cruel sufferings. Debate in Massachusetts Ratifying Convention, 30 Jan. 1788, 2 Elliot 109–14 (remarks of Mr. Holmes).

7. The fifth amendment states, in pertinent part: "No person shall be held to answer for a capital or otherwise infamous crime, unless on a presentment or indictment of a grand jury, except in cases arising in the land or naval forces, or in the militia when in actual service in time of war or public danger...." U.S. CONST. amend. V.

8. *But see* House of Representatives, *Amendments to the Constitution*, 17–18 Aug. 1789, 1 Annals 756, 759–60 (twice defeating motions by Rep. Burke to ban prosecutions by information).

9. *Ex parte Bain*, 121 U.S. 1, 11, 7 S.Ct. 781, 786, 30 L.Ed. 849 (1887) (quoting an actual grand jury charge):

And in the struggles which at times arose in England between the powers of the King and the rights of the subjects, it often stood as a barrier against persecution in his name; until, at length, it came to be regarded as an institution by which the subject was rendered secure against oppression from unfounded prosecutions of the Crown. In this country, from the popular character of our institutions, there has seldom been any contest between the government and the citizen which required the existence of the Grand Jury as a protection against oppressive action of the government. Yet the institution was adopted in this country, and is continued from considera-

tions similar to those which gave to it its chief value in England, and is designed as a means, not only of bringing to trial persons accused of public offenses upon just grounds, but also as a means of protecting the citizen against unfounded accusation, whether it comes from government or be prompted by partisan passion or private enmity.

*United States v. Procter & Gambel Co.*, 356 U.S. 677, 682 n. 6, 78 S.Ct. 983, 986 n. 6, 2 L.Ed.2d 1077 (1958) (a purpose of grand jury secrecy is "to protect [the] innocent accused who is exonerated from disclosure of the fact that he has been under investigation, and from the expense of standing trial where there was no probability of guilt."); *Stirone v. United States*, 361 U.S. 212, 218, 80 S.Ct. 270, 273, 4 L.Ed.2d 252 (1960) ("The very purpose of the requirement that a man be indicted by a grand jury is to limit his jeopardy to offenses charged by a group of his fellow citizens acting independently of either prosecuting attorney or judge."); *Wood v. Georgia*, 370 U.S. 375, 390, 82 S.Ct. 1364, 1373, 8 L.Ed.2d 569 (1962):

Historically, [the grand jury] has been regarded as a primary security to the innocent against hasty, malicious and oppressive persecution; it serves the invaluable function in our society of standing between the accuser and the accused, whether the latter be an individual, minority group, or other, to determine whether a charge is founded upon reason or was dictated by an intimidating power or by malice and personal ill will.

*Branzburg v. Hayes*, 408 U.S. 665, 687, n. 23, 92 S.Ct. 2646, 2659, n. 23, 33 L.Ed.2d 626 (1972) (grand jury stands between the accused and charges based on intimidating power, malice, or personal ill-will); *United States v. Mechanik*, 475 U.S. 66, 74, 106 S.Ct. 938, 943–44, 89 L.Ed.2d 50 (1986) (O'Connor, J., concurring in the judgement) (grand jury stands between the accused and charges based on intimidating power, malice, or personal ill-will).

10. *See, e.g., Gaither v. United States*, 413 F.2d 1061 (D.C.Cir.1969) (grand jury fulfills a protective role); *United States v. Fisher*, 455 F.2d 1101 (2d Cir.1972) (grand jury not a mere tool of prosecutor); *United States v. Thomas*, 788 F.2d 1250 (7th Cir.1986) (protective role of grand jury dominates); *In the Matter of Walsh*, 623 F.2d 489 (7th Cir.1980) (grand jury performs protective role).

the police station abuses leading to the prophylactic rule). Thus, the court agrees with Mr. Justice Marshall and the late Mr. Justice Black, who each distinguished the grand jury from custodial police interrogation, though in different contexts. *United States v. Mara*, 410 U.S. 19, 45–46, 93 S.Ct. 774, 788–89, 35 L.Ed.2d 99 (1973) (Marshall, J., dissenting); *In re Groban*, 352 U.S. 330, 346–47, 77 S.Ct. 510, 520–21, 1 L.Ed.2d 376 (1967) (Black, J., dissenting). The presence of the grand jurors themselves, however captive their power may ultimately be to the prosecutor's desires, ameliorates any inherent duress in the setting. The grand jury is simply not a custodial situation under *Miranda*. Moreover, this conclusion does not turn on whether or not a target of the grand jury's investigation is involved. *See Murphy*, 465 U.S. at 431, 104 S.Ct. at 1144 (mere fact that investigation has focused on a suspect does not trigger *Miranda* warnings in non-custodial settings).

As for the precedent contrary to this court's ruling, the court does not find it persuasive. The *Kreps* opinion requiring *Miranda* warnings has never been cited by a reported opinion in this circuit, nor has the portion of *DiGrazia* at issue. In light of more recent and persuasive opinions, this court declines to follow the lead of these district courts in extending *Miranda's* scope.

*Nickels* and *Burke*, moreover, present only cursory dicta, and the court declines to read them as controlling on the issue of whether *Miranda* can be violated by failure to warn in the grand jury context. Rather, the court reads those opinions as, at most, merely holding out the possibility of required warnings.

As for *Pollard*, The State of Indiana may, of course, interpret its own constitution to provide broader protections than those guaranteed by the United States Constitution. This court, however, is not bound by the Indiana Supreme Court's interpretation of the federal document, and to the extent that it relies on federal law, this court holds that the *Pollard* decision was in error.

Thus, no target or *Miranda* warnings were required, and the court denies the defendant's "Motion to Suppress and Reject Evidence."

### III. CONCLUSION

For the foregoing reasons, the court denies both of defendant's motions in their entirety.