Connolly, J.
On June 20, 1996, a special Suffolk County Grand Jury returned indictments against the above-mentioned defendant and five other defendants for larceny over $250, bucketing, securities fraud, fraudulently overstating a company’s assets, conspiracy to commit larceny over $250, conspiracy to commit bucketing, conspiracy to commit securities fraud and conspiracy to fraudulently overstate a company’s assets. This court, on October 29, 1997, conducted a hearing on the defendant’s motion to suppress. As grounds for the suppression, the defendant argues that any statements obtained during interviews at the Attorney General’s Office or during his testimony to the grand jury were obtained in violation of the Fifth and Sixth Amendments of the United States Constitution and Article 12 of the Declaration of Rights of the Massachusetts Constitution.
For the reasons that follow, the motion to suppress is DENIED.
FINDINGS OF FACT
Based upon the credible evidence, and the inferences reasonably to be drawn therefrom, the court finds the following:
In January of 1995, the defendant came to Boston to be the manager of the Boston office of London & Global, Inc. (London & Global) in charge of recruiting, hiring and training new employees. Prior to coming to Boston, he worked in London & Global’s London office for approximately one year.
During early 1996, the Attorney General’s Office was engaged in an investigation of London & Global. The investigation culminated with the February 29, 1996 execution of a search warrant at the offices of London & Global.
On March 4, 1996, approximately 20 people associated with London & Global voluntarily appeared at the Attorney General’s Office. The defendant was amongst them. The defendant met with State Trooper Martin Foley (Trooper Foley) and Peter Darling (Darling), an investigator for the Attorney General’s Office. At the meeting, which lasted between 45 minutes and one hour, the defendant questioned Trooper Foley and Darling regarding when he was going to get his money back. Trooper Foley and Darling informed the defendant that an investigation was ongoing and that his money would not be returned anytime soon.
During the meeting, the defendant was evasive and calculating in his responses, and did not completely answer all of Trooper Foley’s questions. In addition, the defendant’s attitude changed through the course of the interview. At the beginning he was calm and then became agitated and raised his voice when pressed on certain issues.
At one point during the interview, the defendant asked if he needed a lawyer. Trooper Foley told the defendant that he could have a lawyer, at which point the defendant stated that he did not need one. Nearing the end of the interview, Assistant Attorney General Jeremy Silverfine (Silverfine) appeared and introduced himself to the defendant. When asked, Silverfine also told the defendant that he could have a lawyer.
Trooper Foley, concluding that the interview was not going well, requested that the defendant leave. The defendant sat back and refused to leave. The conversation lasted another five minutes, at which point the defendant left of his own free will.
A few days later, the defendant arrived at the Attorney General’s Office and requested to speak with Darling. The defendant told Darling and Trooper Foley that he was concerned because he had received a *604 telephone call from Man Kin “Daily” Chan (Chan) or Shing He “Ed” Lau (Lau) informing him that they wanted to speak to him. The defendant was concerned that he might be harmed if he talked to them. Trooper Foley suggested that he wear a “wire” at the meeting and that the State Police would cover the meeting. The defendant responded by stating that “he didn’t want to do their stinking police work.” Trooper Foley then asked the defendant to leave and he left. During both of the meetings the defendant was not intoxicated nor did he have any problems comprehending English.
On March 14, 1997, the defendant testified before the grand jury. Assistant Attorney General Silverfine examined the defendant. Prior to commencing the questioning, Silverfine informed the defendant that he might be a potential target of a grand jury inquire and that he had certain rights against self-incrimination. Additionally, Silverfine explained that perjury charges could be brought against him for lying under oath and that he had the right to remain silent. The defendant stated that he understood those rights. In addition, Silverfine told the defendant that he had a right to an attorney. The entirety of that testimony follows:
Q. I want to inform you you have the right to have counsel present, do you understand that right?
A. No, I don’t understand.
Q. You have the right to have counsel with you at this proceeding, that means an attorney present with you, do you understand now?
A. If I have a lawyer you mean?
Q. No, you have a right to have a lawyer with you, you understand
that?
A. No, I didn’t know about that.
Q. I’m informing you now you have the right to have a lawyer.
A. I don’t have a lawyer.
Q. Do you need time to get a lawyer?
A. Well, I don’t need a lawyer. I don’t have any problem. I don’t have money for a lawyer anyway.
Q. I’m asking you, sir, you have a right to a lawyer?
A. You’re telling me now I have, but I don’t have money for a lawyer. [Three questions about prior conversations with investigators where they informed the defendant that he could have an attorney.]
Q. And you’re appearing here today without a lawyer?
A. I don’t have a reason to have a lawyer.
Q. And you’re waiving that right today?
A. I don’t have money to have a lawyer.
Q. I’m asking you, are you waiving that right to have a lawyer?
A. If I can have a free lawyer from the state, probably I would have a lawyer.
Q. Do you need additional time for a lawyer?
A. No, I don’t have money for it anyway.
Q. I’m asking you, are you proceeding today without a lawyer?
A. Yes, I can go without a lawyer.
Q. You’re waiving that right to have an attorney?
A. Now you’re telling me.
Q. You understand what I’m saying?
A. Yes.
RULINGS OF LAW
A. Interviews at the Office of the Attorney General
The defendant first argues that any inculpatory statements made to the investigators should be suppressed because the defendant did not knowingly, intelligently or voluntarily waive his Miranda rights. Miranda warnings, however, are only necessary for “custodial interrogations.” Commonwealth v. Bryant, 390 Mass. 729, 736 (1984). “The police are not required to give warnings every time they interview a witness, but only when the witness is in ‘custody.’ ” Id. The Supreme Court has defined custodial interrogation as questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way. Miranda v. Arizona, 384 U.S. 436, 444, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
The four factors to be considered in determining whether an individual’s freedom of action has been sufficiently constrained so as to require Miranda warnings have been fully elaborated in Commonwealth v. Bryant, supra at 737. Those factors are: “(1) the place of the interrogation; (2) whether the investigation has begun to focus on the suspect, including whether there is probable cause to arrest the suspect: (3) the nature of the interrogation, including whether the interview was aggressive or, instead, informal and influenced in its contours by the suspect; and (4) whether, at the time the incriminating statement was made, the suspect was free to end the interview by leaving the locus of the interrogation or by asking the interrogator to leave, as evidenced by whether the interview terminated with the defendant’s arrest.” Commonwealth v. Jung, 420 Mass. 675, 688 (1995). “Rarely is any single factor conclusive.” Commonwealth. v. Bryant, 390 Mass. at 737; Commonwealth v. Barnes, 20 Mass.App.Ct. 748, 751 (1985).
In applying the Bryant factors, this court finds that the interviews conducted at the Office of the Attorney General were in no way custodial. The defendant voluntarily appeared at the Attorney General’s Office on March 4, 1996. He asked questions and responded to questions by the investigators. At all times during the interview, the defendant was free to leave; in fact, *605 he was asked to leave and eventually left of his own free will.
The defendant also visited the Attorney General’s Office a second time, again of his own free will. He initiated conversation by telling the investigators that he was afraid of Chan and Lau. The conversation ended when the defendant refused to assist in the investigation and was asked to leave by Trooper Foley. On both occasions the defendant voluntarily appeared at the Attorney General’s Office, at no time was he in “custody,” and at the close of each meeting he was free to leave and, in fact, did leave.
Accordingly, this court finds that the investigators were not required to provide the defendant with Miranda rights because he was not in “custody” during either meeting. See Commonwealth v. Kerrigan, 349 Mass. 295, 298-99 (1965) (defendant’s statements to police during an investigatory interrogation were admissible).
B. Grand jury testimony
In determining whether the defendant’s testimony before the grand jury should be suppressed, this court must examine the following issues. First, did the Commonwealth properly inform the defendant of his rights? Second, is the defendant entitled to appointed counsel for a grand jury proceeding?
“Although a grand jury witness ‘is entitled to no warnings of constitutional rights,’ ... he has a right not to be misinformed or led astray by the Commonwealth.” Commonwealth v. Weed, 17 Mass.App.Ct. 463, 469 (1984) (citations omitted).
The United States Supreme Court has held that grand jury witnesses are not constitutionally entitled to “target” or “potential defendant” warnings. United States v. Washington, 431 U.S. 181, 97 S.Ct. 1814, 52 L.Ed.2d 238 (1977) . In Massachusetts, “[t]he Supreme Judicial Court has not had occasion to rule on the issue whether, under art. 12 of the Massachusetts Declaration of Rights, a grand jury witness should be warned if he is a potential defendant.” Gilliard, 36 Mass.App.Ct. 183, 187-88 (1994). The Appeals Court, however, has hinted that “(t]here are sound reasons why such a right might be found in our Constitution.” This court finds that, even assuming a right to be warned of potential defendant status would be found in the Massachusetts Constitution, the Commonwealth properly alerted the defendant that he was a potential target of a grand jury inquire.
In addition, the Washington court also extended the earlier plurality view that full Miranda warnings are not required in the grand jury context. See United States v. Mandujano, 425 U.S. 564, 580-81, 96 S.Ct. 1768, 1778, 48 L.Ed.2d 212 (1976). The Supreme Court stated that “[t]o extend the concepts of Miranda . . . would require that the witness be told that there was an absolute right to silence, and obviously any such warning would be incorrect, for there is no such right before a grand jury.” Mandujano, 425 U.S. at 580, 96 S.Ct. at 1778. “Under Miranda, a person in police custody has, of course, an absolute right to decline to answer any question, incriminating or innocuous, . .. whereas a grand jury witness, on the contrary, has an absolute duty to answer all questions, subject only to a valid Fifth Amendment claim.” Mandujano, 425 U.S. at 580-81, 96 S.Ct. at 1778 (citation omitted).
Although our Supreme Judicial Court has consistently held that art. 12 requires a broader interpretation with regard to communicative evidence than that of the Fifth Amendment, Attorney General v. Colleton, 387 Mass. 790, 796 (1982), it has not expanded the constitutional requirements in this particular area. Accordingly, this court finds that the Commonwealth was not required to provide the defendant with a full recitation of his Miranda rights.
Nevertheless, the grand juiy transcript clearly demonstrates that the defendant was told that he was a potential target of the investigation, that he had certain rights against self-incrimination, that he had the right to remain silent, and that he had a right to an attorney. The Commonwealth sufficiently informed the defendant of his rights and did not mislead nor misinform the defendant as to those rights.
The defendant additionally argues that the Commonwealth’s continued questioning after his request for appointed counsel requires suppression. Assuming, without finding, that the defendant actually requested appointed counsel, this court concludes that there is no right to appointed counsel in a grand jury proceeding.
“A witness called to testify before a grand jury has no constitutional right, Federal or State, to the assistance of counsel." Commonwealth v. Gilliard, 36 Mass.App.Ct. at 186. Moreover, a defendant’s right to assistance of counsel under the Sixth Amendment and art. 12 attaches only from the time that adversary judicial proceedings have been initiated. Commonwealth v. Griffin, 404 Mass. 372, 374 (1989). “As a grand juiy is an investigatory and accusatoiy body only, ... a proceeding before it is not an adversary judicial proceeding.” Id. (citation omitted). Similarly, grand juiy testimony does not trigger the Fifth Amendment right to counsel activated by custodial interrogation. Compare Miranda v. Arizona, supra; Commonwealth v. Bryant, supra.
“A grand jury witness does have a statutory right under G.L.c. 277, §14A,[1] inserted by St. 1977, c. 770, ‘to consult with counsel and to have counsel present at. . . examination before the grand jury . . . [,]’ and, presumably, one who ... is indigent has the right to have counsel appointed to assist [him] at no expense to [him].” Id. Although G.L.c. 277, §14A provides a grand jury witness with the right to consult with an attorney, that right is not the same as the right to appointed counsel. Chandler v. Fretag, 348 U.S. 3, 9 (1954). See also United States v. Gillespie, 773 F.Supp. *606 1154, 1156 n. 3 (N.D.Ind. 1991), aff'd 974 F.2d 796 (7th Cir. 1992) (‘The usual witness before the grand jury, of course, may not remain silent without asserting a privilege, and has no recognized federal rights to counsel in the grand jury room or to appointed counsel”); In re Grand Jury Matter Number 86-525-5, 689 F.Supp. 454, 458 (E.D.Pa. 1987) (“An individual subpoenaed to testify before a grand jury has neither the right to have counsel appointed to ‘represent’ him . . .”).
In fact, G.L.c. 277, §14A is silent on the matter of appointed counsel. Opinion of the Justices, 373 Mass. 915, 921 -22 (1977). Notwithstanding the dicta in Commonwealth v. Gilliard, supra, indicating that an indigent grand jury witness presumably has the right to appointed counsel, no binding Massachusetts or federal precedent has established a constitutional right to appointed counsel at a grand jury proceeding.[2] Accordingly, this court concludes that, at the present time, no such right exists.
For the above mentioned reasons, this court finds that the defendant was properly informed of his rights prior to testifying before the grand jury.
ORDER
It is therefore ORDERED that the defendant’s motion to suppress statements is DENIED.

General Laws chapter 277, §14A states as follows:
Any person shall have the right to consult with counsel and to have counsel present at every step of any criminal proceeding at which such person is present, including .. . questioning or examination before the grand jury; provided however, that such counsel . . . shall make no objections or arguments or otherwise address the grand juiy or the district attorney. No witness may refuse to appear for reason of unavailability of counsel for that witness.

 This court further notes that the evidence presented shows that the defendant was not indigent. Specifically, London & Global wrote a letter on the defendant’s behalf stating that he was earning in excess of $60,000 per year. In addition, London & Global paid for his apartment, and he had recently purchased a $23,000 condominium in cash.