**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**James W. JACKSON,**
**Defendant–Appellant.**

**No. 87–1616.**

United States Court of Appeals,
Seventh Circuit.

Argued Nov. 12, 1987.
Decided Dec. 29, 1987.

Thomas E. Williams, Greenfield, Ind., for defendant-appellant.

Paula E. Lopossa, Asst. U.S. Atty., Indianapolis, Ind., for plaintiff-appellee.

Before BAUER, Chief Judge, and RIPPLE and MANION, Circuit Judges.

RIPPLE, Circuit Judge.

James W. Jackson appeals his conviction on two counts of giving false oaths at two bankruptcy proceedings and one count of concealment of Farmers' Home Administration (FHA)-secured farm equipment.[1] The United States District Court for the Southern District of Indiana sentenced Mr. Jackson to three years imprisonment on each count. The sentences are to run concurrently. However, the court suspended these sentences. A fine also was imposed. For the reasons stated in this opinion, we affirm the judgment of the district court.

## I

### Background

Mr. Jackson was a hog and row crop farmer in Bartholomew County, Indiana for 31 years. In 1981, the FHA made two loans to Mr. Jackson in the amounts of $164,000 and $104,000. The second loan was secured by real estate, crops, livestock and seventeen pieces of farm equipment that allegedly were in the possession of Mr. Jackson. The security agreement prepared by the FHA, which secured the farm equipment collateral, was signed on June 15, 1981. Mr. Jackson defaulted on the first payment. Subsequently, just prior to an anticipated sheriff's sale of his farm, Mr. Jackson and his wife filed a petition for reorganization under Chapter 11 of the Bankruptcy Code (the Code) on November 10, 1983.[2]

On September 20, 1984, an FHA inspector came to the Jackson farm to inspect the secured farm equipment. The inspector found only three pieces of the equipment. Mr. Jackson stated that the remaining equipment was either loaned out and not returned or stolen. The FHA then requested a Bankruptcy Rule 2004 hearing; the hearing took place on November 16, 1984. Under oath at the Rule 2004 hearing, Mr. Jackson reiterated his account that the farm equipment collateral either was lost or stolen or that he was unaware of its whereabouts. He also testified that he did not report the loss or theft to either the police or his insurance company. In addition, he stated that he had sold the livestock. The United States Attorney filed a complaint to have Mr. Jackson's debt to the FHA adjudicated nondischargeable because he had concealed the collateral. At a dischargeability hearing, pursuant to Bankruptcy Rule 7001 *et seq.*, Mr. Jackson again stated that he did not know the location of the missing collateral.

Shortly thereafter, Mr. Jackson was divorced by his wife. Mrs. Jackson then contacted the FHA inspector who originally had inspected the Jackson farm. Acting pursuant to information given to him by Mrs. Jackson, the inspector discovered and seized the bulk of the missing farm equipment, which was located in a pole barn on Mr. Jackson's property. The remaining secured equipment was found on the farms of Mr. Jackson's father, uncle and neighbor. Mr. Jackson was indicted for making false material oaths and fraudulently concealing secured property under 18 U.S.C. § 152. Count I of the indictment charged Mr. Jackson with making a false material oath at a Bankruptcy Rule 2004 hearing concerning the location of the FHA-secured farm equipment. Count II of the indictment charged Mr. Jackson with making a false material oath at the bankruptcy dis-

---

1. The two proceedings were a Bankruptcy Rule 2004 hearing and a Rule 7001 *et seq.* dischargeability adversary hearing.

2. The Jacksons later moved to convert the reorganization to a liquidation under Chapter 7 of the Code. The United States Bankruptcy Court for the Southern District of Indiana granted the motion on October 29, 1984.

chargeability hearing concerning the same FHA-secured collateral. Another count of the indictment alleged that Mr. Jackson knowingly and fraudulently concealed the FHA-secured farm equipment by failing to disclose its location.[3]

Mr. Jackson entered a plea of not guilty. However, the jury returned a verdict of guilty on all three counts. Mr. Jackson then filed a motion for judgment of acquittal. On the same day, he also filed a premature notice of appeal. After the district court denied the motion for a new trial and imposed sentence, Mr. Jackson timely refiled his notice of appeal. Jurisdiction in the district court is based on 18 U.S.C. § 3231 (district courts have original jurisdiction "of all offenses against the laws of the United States"). Jurisdiction in this court is based on 28 U.S.C. § 1291.

## II

### Discussion

Mr. Jackson raises five arguments on his appeal: (1) whether a bankrupt debtor has a right to *Miranda* warnings at a Bankruptcy Rule 2004 hearing or at a bankruptcy dischargeability adversary hearing; (2) whether the district court improperly limited cross-examination of Mr. Jackson's ex-wife; (3) whether, under 18 U.S.C. § 152, the administration of an oath must be proven as an element of the offense; (4) whether statements made concerning an allegedly superseded security agreement are "material" for the purpose of prosecution as false oath statements; and (5) whether the court should have required that the bankruptcy proceedings be final before permitting a criminal prosecution of Mr. Jackson.

### A. *Miranda Rights*

■ Mr. Jackson contends that the United States should have warned him at the bankruptcy hearings that he might be subject to future criminal proceedings. He submits that, if he had received such warn-

ings, he would not have given a false oath at either of the two hearings. He then asserts that the testimony given at a compelled bankruptcy hearing is no different than statements compelled by police pursuant to custodial interrogations. As his counsel quite frankly admitted at oral argument, our acceptance of this argument would require an extension of the Supreme Court's decision in *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

This matter need not detain us long. First, the matter was not raised at trial and therefore is not properly before us on appeal. *See Singleton v. Wolff,* 428 U.S. 106, 120, 96 S.Ct. 2868, 2877, 49 L.Ed.2d 826 (1976); *Sharp v. Ford Motor Credit Co.,* 615 F.2d 423, 424 n. 1 (7th Cir.1980); *Smith v. No. 2 Galesburg Crown Finance Corp.,* 615 F.2d 407, 409 n. 3 (7th Cir.1980); *Wagner v. United States,* 573 F.2d 447, 451 (7th Cir.1978). However, since a proper resolution of the matter is "beyond any doubt," *Singleton,* 428 U.S. at 121, 96 S.Ct. at 2877; *see also Turner v. City of Memphis,* 369 U.S. 350, 353, 82 S.Ct. 805, 807, 7 L.Ed.2d 762 (1962), we will resolve the matter on the merits and permit the bench and bar to dispose summarily of any similar argument in future cases. The holding of the Supreme Court in *Miranda* applies only—by the explicit language of *Miranda* itself—to a custodial interrogation in a criminal investigation:

The principles announced today deal with the protection which must be given to the privilege against self-incrimination when the individual is first subjected to police interrogation while in custody at the station or otherwise deprived of his freedom of action in any significant way. It is at this point that our adversary system of criminal proceedings commences, distinguishing itself at the outset from the inquisitorial system recognized in some countries. Under the system of warnings we delineate today or

---

3. In count three of the indictment, Robert W. Wolfe, a witness testifying for Mr. Jackson in the dischargeability hearing, was charged with knowingly and fraudulently making a false material oath about the number of hogs present on Mr. Jackson's property. Ultimately, a jury found Mr. Wolfe not guilty of the offense charged.

under any other system which may be devised and found effective, the safeguards to be erected about the privilege must come into play at this point.

*Miranda,* 384 U.S. at 477, 86 S.Ct. at 1629. In subsequent cases, the Supreme Court has firmly and unequivocally adhered to this limitation on the scope of *Miranda.* *See, e.g., Minnesota v. Murphy,* 465 U.S. 420, 430, 104 S.Ct. 1136, 1143, 79 L.Ed.2d 409 (1984); *California v. Beheler,* 463 U.S. 1121, 1123–24, 103 S.Ct. 3517, 3519–20, 77 L.Ed.2d 1275 (1983) (per curiam); *Rhode Island v. Innis,* 446 U.S. 291, 300, 100 S.Ct. 1682, 1689, 64 L.Ed.2d 297 (1980); *Oregon v. Mathiason,* 429 U.S. 492, 494–95, 97 S.Ct. 711, 713–14, 50 L.Ed.2d 714 (1977) (per curiam); *United States v. Mandujano,* 425 U.S. 564, 579–80, 96 S.Ct. 1768, 1777–78, 48 L.Ed.2d 212 (1976) (plurality); *Beckwith v. United States,* 425 U.S. 341, 345–48, 96 S.Ct. 1612, 1615–16, 48 L.Ed.2d 1 (1976); *Orozco v. Texas,* 394 U.S. 324, 326–27, 89 S.Ct. 1095, 1096–97, 22 L.Ed.2d 311 (1969); *Mathis v. United States,* 391 U.S. 1, 4–5, 88 S.Ct. 1503, 1504–05, 20 L.Ed. 2d 381 (1968). The obligation of an intermediate appellate court is to follow, not contract or expand, Supreme Court precedent. Consequently, our cases have adhered rigidly to the mandate of the Supreme Court. *United States v. Bush,* 820 F.2d 858, 861–62 (7th Cir.1987); *United States ex rel. Link v. Lane,* 811 F.2d 1166, 1170 (7th Cir.1987); *see also United States v. Castello,* 830 F.2d 99, 102 (7th Cir.1987). Mr. Jackson, while under compulsion to testify at the bankruptcy proceedings, was not in police custody with respect to a criminal investigation. He offers no reason why he should not be subject to the rule that "if a witness under compulsion to testify makes disclosures instead of claiming the [fifth amendment] privilege [against self-incrimination], the government has not 'compelled' him to incriminate himself." *Murphy,* 465 U.S. at 427, 104 S.Ct. at 1142 (quoting *Garner v. United States,* 424 U.S. 648, 654, 96 S.Ct. 1178, 1182, 47 L.Ed.2d 370 (1976) (footnote omitted)); *see also Mandujano,* 425 U.S. at 574–75, 96 S.Ct. at 1775–76 (1976) (*Miranda* warnings need not have been given

to grand jury witness who perjured himself under oath before grand jury and who did not assert his fifth amendment rights). Accordingly, Mr. Jackson's contentions are without any merit.

**B.  *Cross-examination***

Mr. Jackson next contends that the district court restricted his cross-examination of his ex-wife. He claims that the court's actions impeded him from demonstrating her bias towards him and thus prevented the exercise of his sixth amendment right to confront his accuser. He also asserts that the court's ruling prevented him from presenting his defense that Mrs. Jackson, not he, was the concealer of the secured farm equipment. In reply, the government submits that the district court did not limit Mrs. Jackson's cross-examination. In fact, according to the government, Mr. Jackson never even attempted to elicit Mrs. Jackson's bias in connection with either the divorce or the concealment of the collateral. The government notes, however, that the court did limit the cross-examination of another witness, Mrs. Jackson's son, Joseph Hehe. Our review of the record demonstrates that Mr. Jackson is mistaken about what transpired before the district court; the government's version is correct.

▪ Under Fed.R.Evid. 611(b), cross-examination is limited to matters raised on direct examination or bearing on the credibility of the witness. Moreover, "[t]he court may, in the exercise of discretion, permit inquiry into additional matters as if on direct examination." *Id.* Our standard of review of a district court's evidentiary ruling is whether the court abused its discretion. *United States v. Castro,* 788 F.2d 1240, 1244 (7th Cir.1986); *United States v. De Gudino,* 722 F.2d 1351, 1354 (7th Cir. 1983). At Mr. Jackson's trial, there was only one question to which the court, upon the government's objection, did not permit an answer. Defense counsel had asked Mr. Hehe if he knew whether his mother, Mrs. Jackson, had sold any marital property in 1985. The government objected that the term "marital property" was too broad. The defense counsel rephrased the ques-

tion. The rephrased question was whether Mr. Hehe was aware of any personal property belonging to Mr. and Mrs. Jackson that Mrs. Jackson sold in the spring of 1985. Mr. Hehe replied "No." Tr. at 122. Defense counsel then posed the marital property question again, but specified the time period as the first three months of 1985. The district judge then asked the government if it would object and its counsel did so. The court sustained the objection before the witness answered the question. The court explained its decision by noting that "this [trial] is limited to the 17 pieces of equipment. The rest of it is another lawsuit.... We are not interested in the divorce case, in other words." *Id.*

As the Supreme Court has stated, "trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, *confusion of the issues,* the witness' safety or interrogation that is repetitive or *only marginally relevant." Delaware v. Van Arsdell,* 475 U.S. 673, 106 S.Ct. 1431, 1435, 89 L.Ed. 2d 674 (1986) (emphasis supplied). Mr. Jackson simply makes no showing that the district court abused its discretion in preventing further cross-examination. The district judge was anxious to focus the inquiry on the missing property and to avoid extraneous issues relevant only to the Jacksons' divorce. *See* Fed.R.Evid. 611(b). His ruling was hardly an abuse of discretion.

## C. *The False Oath*

■ Mr. Jackson contends that, to convict a defendant of giving a false material oath, the prosecution must prove beyond a reasonable doubt that the defendant testified under oath. While he presents no factual discussion in his brief on this point, his "statement of facts relevant to issues on appeal" recites that, at the dischargeability hearing, there was no record of his taking an oath. The government contends that Mr. Jackson was sworn prior to testifying at both bankruptcy proceedings.

The evidence in the record is uncontroverted that Mr. Jackson was administered an oath prior to giving testimony in both bankruptcy proceedings. The record of the Rule 2004 hearing contains a recitation of the oath Mr. Jackson took prior to testifying. The record of the dischargeability hearing indicates that he was sworn; the oath was not recorded. Moreover, court reporters from both proceedings testified at trial that Mr. Jackson was placed under oath. In considering a challenge to the sufficiency of evidence, "[our] standard of review requires that the evidence be reviewed in a light most favorable to the government in determining whether *'any* rational trier-of-fact could have found the essential elements of the crime beyond a reasonable doubt.'" *United States v. Draiman,* 784 F.2d 248, 251 (7th Cir.1986) (quoting *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979) (emphasis in original)); *see also United States v. Perlaza,* 818 F.2d 1354 (7th Cir.), *cert. denied,* — U.S. —, 108 S.Ct. 176, 98 L.Ed.2d 130 (1987). Mr. Jackson has failed to overcome this formidable burden in light of the record and the court reporters' uncontroverted testimony.

## D. *Materiality of False Statements*

Mr. Jackson next contends that he entered into a new security agreement in 1983 with the FHA, which superseded the 1981 security agreement introduced at trial. Mr. Jackson asserts that his false statements were not material since they concerned "an outdated and superseded security agreement." Appellant's Br. at 13. Furthermore, he submits that the government did not produce the 1983 security agreement at his trial and thus failed to show any materiality concerning that purported agreement. In contrast, the government contends that Mr. Jackson never suggested that the 1983 security agreement covered collateral different from the 1981 agreement. The government also argues that the security statement filed in 1981 was effective under Indiana law for five years from the date of signing. Accordingly, it argues that the security agreement signed in 1981 was effective through June

3, 1986. The bankruptcy proceedings took place in 1984 and 1985. As a result, the government submits that the 1981 agreement was never superseded. Furthermore, it asserts that, regardless of which security agreement was operative, Mr. Jackson's false statements that the FHA-secured collateral was borrowed or stolen "bears a relationship" to the discovery and disposition of Mr. Jackson's assets and, therefore, is material.

We turn first to the record. Defense counsel raised—obliquely—the existence of the purported 1983 security agreement on direct examination of Mr. Jackson:

Q. (By defense counsel)—Is it a fact that all of the equipment that's on the security agreement is equipment which you have tried to maintain?

A. Correct.

Q. Did Mr. McIntyre [the FHA inspector] visit your farm in 1983 in the summer that you recall?

A. Yes, sir.

Q. And was the security agreement signed then?

A. Yes, sir.

Q. And has that been produced today?

A. No.

Q. Was that a replacement security agreement for the one in 1981?

A. I believe so.

Q. Do you have a copy of that?

A. No, I don't.

Tr. at 189. The matter was not addressed by the government on cross-examination, nor mentioned again by defense counsel during the remainder of the trial. Subsequent to the jury's returning its guilty verdict, however, Mr. Jackson filed a motion for judgment of acquittal with the district court pursuant to Rule 29(c) of the Federal Rules of Criminal Procedure.[4] In his motion, Mr. Jackson sought acquittal because the 1981 security agreement was superseded by the alleged 1983 agreement,[5] thereby making his false statements immaterial.

■ Although the statute does not expressly state a materiality requirement, 18 U.S.C. § 152 has been construed "to require that [a] false oath be given in relation to some material matter." *United States v. O'Donnell*, 539 F.2d 1233, 1237 (9th Cir.), *cert. denied*, 429 U.S. 960, 97 S.Ct. 386, 50 L.Ed.2d 328 (1976); *see also Lee Supply Corp. v. Agnew*, 818 F.2d 1284, 1290 (7th Cir.1987) (construing false oath under 11 U.S.C. § 727(a)(4)(A)—denial of discharge—as requiring relation of oath to a material matter). Proof of materiality requires that an oath or concealment either "bears a relationship to the bankrupt's business transactions or his estate," *O'Donnell*, 539 F.2d at 1238, or pertains to the "discovery of assets, including the history of a bankrupt's financial transactions." *In re Mascolo*, 505 F.2d 274, 277 (1st Cir.1974). Here, the district court concluded as a matter of law "that any oaths made, as to where any assets or property was located at the time when the alleged false oaths were made, are material." R.1 at 71 (Jury Instruction No. 22).

We believe that the district court correctly stated the dispositive principle of law. When he made the statements at issue and when he altered the identification of the equipment, Mr. Jackson was under an obligation to disclose to the bankruptcy court the whereabouts of assets of his estate subject to the adjudication of the bankruptcy court. His obligation was not dependent on the bankruptcy court's final adjudication of the status of the property. Moreover,

4. In its argument in opposition to Mr. Jackson's motion for judgment of acquittal, the government contends that under Rule 29(c), Mr. Jackson's motion was eleven days late. Eleven days, however, represents the total number of days between the discharge of the jury and the filing of the motion. Consequently, the government appears to have miscalculated by failing to subtract the seven-day period permitted under Rule 29(c). Under the government's theory, then, Mr. Jackson was four days late and not eleven. However, the government has failed to consider the provisions of Rule 45(a) which, under the circumstances here, require the exclusion of Saturdays, Sundays and legal holidays.

5. In his motion for judgment of acquittal, Mr. Jackson contended that the 1981 security agreement was superseded by a *1984* agreement. The trial transcript evidences, however, that the purported subsequent security agreement allegedly was signed in *1983* at the Jackson farm. Tr. at 189.

we note that Mr. Jackson never contended that the equipment in question was not subject to a security interest by the FHA, whether the operative security agreement was the 1981 or the 1983 agreement. Indeed, in his own testimony, he suggested that the purported 1983 agreement, as he understood it, was simply a "replacement security agreement." Tr. at 189. There was absolutely no indication by the defendant that he considered the purported 1983 agreement a novation or that it otherwise superseded the 1981 agreement. Therefore, his false statements as to the whereabouts of the property clearly were material to the proceedings in which he gave false testimony and concealed the equipment.

### E.  *Finality of Proceedings*

██ Mr. Jackson's last argument is that this court should fashion a rule requiring bankruptcy proceedings to be concluded prior to the filing of criminal charges. He submits that, under the bankruptcy laws, if a debtor discovers his secured property and refuses to return it, he can claim an amended exemption to have the secured lien voided. Appellant's Br. at 13. The government responds simply by contending that the crime of concealment does not include an element that the property is not exempt or that the bankruptcy is not final.

Our answer here must be the same as our answer to the last contention. No matter what the ultimate adjudication of the bankruptcy court may be, the defendant was under an obligation to inform the court truthfully of the whereabouts of his property. This court recently has noted:

> It is a reasonable reading of 18 U.S.C. § 152 to conclude that the statute requires a bankrupt to disclose the existence of assets whose immediate status in bankruptcy is uncertain. Even if the asset is not ultimately determined to be property of the estate under the technical rules of the Federal Bankruptcy Code, Section 152 properly imposes sanctions on those who preempt a court's determination by failing to report the asset.

*United States v. Cherek*, 734 F.2d 1248, 1254 (7th Cir.1984), *cert. denied*, 471 U.S. 1014, 105 S.Ct. 2016, 85 L.Ed.2d 299 (1985). As *Cherek* demonstrates, finality is not necessary to show falsity of statements and concealment. Even if it were possible for Mr. Jackson to have avoided the FHA's security interest in the farm equipment, he was not excused from informing the bankruptcy court of the whereabouts of the equipment at the bankruptcy hearings.

### Conclusion

Accordingly, we affirm the judgment of the district court.

AFFIRMED.