**In re Milton BAILEY, Debtor.**

**BENSENVILLE COMMUNITY CENTER UNION, Plaintiff,**

v.

**Milton BAILEY, Defendant.**

**Bankruptcy No. 91 B 15505.**

**Adv. No. 91 A 1211.**

United States Bankruptcy Court, N.D. Illinois, E.D.

Nov. 2, 1992.

---

Kerry S. Trunkett, Walinski & Trunkett, Chicago, Ill., for plaintiff.

Jeffrey S. Harris, Chicago, Ill., for defendant.

JACK B. SCHMETTERER, Bankruptcy Judge.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

*Introduction*

The Complaint herein alleges two causes of action brought by the Bensenville Community Credit Union (the "Union"). Count I, brought under 11 U.S.C. § 727(a)(4), objects to discharge of the debtor Milton Bailey ("Bailey"), alleging that he knowingly and fraudulently made a false oath or account in regard to his bankruptcy schedules. Count II, brought pursuant to 11 U.S.C. § 523(a)(2)(B), alleges that debtor made a false statement on a financial statement allegedly prepared by him for the purpose of refinancing a car loan.

### FINDINGS OF FACT

1. On July 23, 1991, the debtor-defendant Milton Bailey voluntarily signed his bankruptcy petition and schedules filed on his behalf in that related proceeding in this Court, No. 91 B 15505.

2. Bailey had the opportunity to review his schedules and statement of affairs prior to signing his name. In signing his name upon the petition and schedules, Bailey swore, under penalties of perjury, that all of the information contained in his bankruptcy schedules were true and correct to the best of his knowledge, information, and belief.

3. However, the debtor Bailey failed to list in his sworn bankruptcy statement of financial affairs and bankruptcy schedules all financial accounts which he owned prior to and at the time of his filing. These financial accounts which the debtor failed to disclose include the following:

A. At and prior to the time of filing his bankruptcy petition and schedules, Bailey deposited net pay received from his employment with the United States Post Office by way of direct deposit into account number 04804902 at the First Chicago Bank.

B. Defendant also had a savings account with the United States Postal Service Credit Union, located in Washington, D.C., under account number 52962. Defendant made deposits of $100.00 into this particular account every two weeks directly from income he received from the United States Post Office.

C. Defendant also owned an account with the Chicago Post Office Employees Credit Union, account number 14391-0. He made a direct deposit of $200.00 every two weeks into this particular account.

D. Defendant also omitted in his bankruptcy schedules and statement of financial affairs the aggregate deposit of between $7,000.00 and $8,000.00 that he held with a U.S. Government "Thrift Plan" account through the National Finance Center.

4. In signing his name to his bankruptcy petition, statement of financial affairs, and schedules, plaintiff contends that Bailey made a false oath to this Bankruptcy Court concerning his financial affairs and assets, the same being the basis for seeking denial of his discharge under § 727(a)(4).

5. Plaintiff further contends that Bailey made another false statement and oath at his meeting of creditors, held pursuant to 11 U.S.C. § 341, by again attesting under oath to the fact that the information contained in his petition and statement of financial affairs was true and accurate.

6. Count I of the Complaint raises the factual issue of whether the schedules and statements filed in bankruptcy by defendant are materially false and misleading, in that he failed to disclose therein the foregoing accounts.

7. Defendant countered that various omissions from his schedules were inadvertent errors, mistakenly omitted, without fraudulent intent, and therefore do not rise to the level of active, knowing omissions with fraudulent intent which would lead this Court to deny debtor his discharge. This argument rests on assertions concerning the debtor's level of education and understanding of the schedules; the asserted minimal and trivial value of the property which debtor failed to list on his schedules; the asserted lack of any real harm that failure to list assets has had or could have had on creditors and their ability to receive a distribution; the argued lack of justification or motive for making false statements

or oaths; and, finally, the credibility of the debtor.

8. While the debtor Bailey is not a sophisticated business or professional person, he was generally aware of the questions posed in the bankruptcy schedules, the reasons for such questions, and the importance of answering the questions properly or with full information.

9. Some of Bailey's omissions were minor and inconsequential to the debtor's estate. The two credit union accounts and one checking account omitted from the schedules had, as stipulated by the parties, an aggregate value of less than $450.00 on the date of filing. Furthermore, each of these accounts would be exempt and therefore of no value to the creditors.

10. Bailey contends that he thought he provided correct answers to all his attorney's questions regarding his accounts. He was paid every two weeks. From each paycheck, Bailey deposited $100.00 into one credit union account, and another $200.00 into the second credit union account. The balance of his earnings was deposited into his checking account. Each of the accounts were used, either individually or in combinations, to pay Bailey's personal debts each month. The funds were used for urgent needs, such as rent, utilities, food, gasoline, clothing, and medications. After payments for all of his living expenses, Bailey had no money left over. He lived from paycheck to paycheck, sometimes having to borrow between paychecks to pay his regular living expenses. Therefore, in response to his attorney's questioning whether he had any money on deposit in any banks or credit unions, Bailey answered what he believed to be correct by saying "no". Bailey had only small amounts in these accounts, and therefore he did not believe they had to be listed.

11. Debtor is employed by the United States Post Office. He opened a "Thrift Savings Plan" account, funded by withholdings from his salary. Deposits into and earnings on such accounts are tax deferred, much like IRA accounts. Such accounts may ultimately be used by owners to fund their retirement or any other non-

retirement purpose they choose. Debtor's Thrift Plan account is substantially more valuable than the other assets he failed to list. Bailey failed to list or schedule that asset, and failed to list the value of that asset. The value on the date of filing was between $7,000.00 and $8,000.00.

12. Debtor argues that the Thrift Plan was a form of retirement benefit that is exempt from creditors and is likewise of no value to the creditors of Bailey. He did not, however, list this account on his schedule of claimed exemptions. He argues that he referred to it on his schedule by a vague reference to "Retirement Benefits" on Plaintiff's Ex. 3 (Schedule B–2, page 2) However, that reference did not even impliedly identify either the Thrift account or any amount deposited therein. Moreover, no claim of exemption was filed for it. Plaintiff's Ex. 3 (Schedule B–4).

13. Furthermore, the evidence reveals that the Post Office maintains a retirement program which is separate and apart from the Thrift Savings Plan, and that Bailey participated in that program. There is no evidence from which the Court can conclude that his deposit in the Thrift Savings Plan would be exempt from his creditors.

14. In 1987, Bailey purchased an automobile which was financed through the Bensenville Community Credit Union. He made almost every scheduled payment for the next two years. Then in April 1990, the plaintiff credit union informed him that he had to come in to sign new papers for his car loan. He evidently was behind in his loan at that time.

15. On or about April 14, 1990, defendant Bailey executed a new loan application form in favor of the Union in order to refinance his loan. A Union officer asked him to sign the application, which he did. She filled out the application from his answers to questions that she orally posed to him.

16. Contemporaneously with his execution of the loan application, defendant executed a new loan agreement in favor of the Union in the face amount of $12,203.50 with an annual percentage rate of 15% per annum. The monthly payment due under said loan agreement was $300.00 per month.

17. The Union placed a lien on a title to a certain automobile, one 1984 Toyota Corsica, Serial No. 3T2MX638E0064682, as security for said loan.

18. The loan, dated April 14, 1990 by and between defendant Bailey and the plaintiff Union, was not performed by Bailey. The Union, therefore, declared a default under the terms of said promissory note.

19. Plaintiff's claim under 11 U.S.C. § 523(a)(2)(B) is that Bailey failed to report on the loan application that he had an obligation to pay child support in April of 1990 when he signed the loan application.

20. Plaintiff argues that, if it had known of Bailey's child support obligation, the refinancing loan would not have been approved.

21. However, plaintiff's officer completed the loan application form for Bailey. Debtor acted without knowledge or intent to defraud plaintiff when signing the loan application. Moreover, plaintiff did not establish by a preponderance of evidence that debtor was asked questions that clearly called for his disclosure in their conversation of his obligations for child support.

22. Fact findings set forth in the Conclusions of Law will stand as additional Findings of Fact.

## CONCLUSIONS OF LAW

1. Jurisdiction lies under 28 U.S.C. § 1334, and this matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(J)(I).

### Count I: 11 U.S.C. § 727(a)(4)

2. Paragraph 9 of the Complaint alleges that "debtor knowingly and fraudulently made a false oath or account in connection with his case." Therefore, the Court treats Count I of the complaint as a prayer to deny Debtor's discharge pursuant to 11 U.S.C. § 727(a)(4)(A) which provides that, "the court shall grant the debtor a discharge, unless— ... the debtor knowingly and fraudulently, in or in connection with

the case ... made a false oath or account...."

■ 3. For a debtor to be barred from discharge pursuant to § 727(a)(4)(A), the plaintiff must prove by a preponderance of evidence that: (1) debtor made a statement under oath; (2) the statement was false; (3) debtor knew the statement was false; (4) debtor made the statement with fraudulent intent; and (5) the statement related materially to the bankruptcy case. *Matter of Beaubouef,* 966 F.2d 174, 178 (5th Cir. 1992); *In re Bailey,* 145 B.R. 919 (Bankr. N.D.Ill.1992) (Ginsberg, J.); *In re Sapru,* 127 B.R. 306, 314 (Bankr.E.D.N.Y.1991). *See also* Fed.R.Bankr. P. 4005 ("At the trial on a complaint objecting to discharge, the plaintiff has the burden of proving the objection").

4. There is no dispute that defendant failed to disclose his accounts at First Chicago Bank and the two credit unions or his deposit with the Government Thrift Savings Plan on his schedules of assets accompanying his petition for relief. His ambiguously scheduled reference to a retirement program was not enough to identify his $7,000.00 to $8,000.00 deposit with the Thrift Savings Plan for further inquiry by the Chapter 7 Trustee or creditors. Indeed, his statement of financial affairs and schedules stated that he had no deposits in any thrift or pension funds. *See* Statement of Affairs, Page 2, Paragraph 4(a). Since the omission of assets from schedules constitutes a false oath for purposes of § 727(a)(4)(A), *In re Johnson,* 98 B.R. 359, 365 (Bankr.N.D.Ill.1988); 4 *Collier on Bankruptcy,* ¶ 727.04[1A] (15th Ed.1992), plaintiff has established the first two elements of its § 727(a)(4)(A) action.

### Materiality

5. The sum of the balances in defendant's accounts at First Chicago Bank and the two credit unions is less than $450.00. Defendant's deposit with the Government Thrift Savings Plan ranged between $7,000.00 and $8,000.00. The Thrift Plan might possibly be exempt under 11 U.S.C. §§ 541(c)(2) or 522. *Cf. Patterson v. Shumate,* — U.S. —, 112 S.Ct. 2242, 119 L.Ed.2d 519 (1992), but evidence was not offered to establish that. However, an issue raised in this case is whether the omission of the other accounts of small value and within debtor's exemption, although not specifically claimed as exempt, is a material misrepresentation and grounds for denial of discharge under § 727.

■ 6. It is well-established that the test for materiality of the subject matter of a false oath is whether it "bears a relationship to the bankrupt's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of his property." *In re Chalik,* 748 F.2d 616, 618 (11th Cir.1984). *See also Matter of Agnew,* 818 F.2d 1284, 1290 (7th Cir.1987); *In re Sawyer,* 130 B.R. 384, 394 (Bankr.E.D.N.Y.1991); *In re Martin,* 124 B.R. 542, 544 (Bankr.N.D.Ind. 1991); *In re Montgomery,* 86 B.R. 948, 956 (Bankr.N.D.Ind.1988); *Cf. United States v. Key,* 859 F.2d 1257, 1261 (7th Cir.1988), and *United States v. Jackson,* 836 F.2d 324, 329 (7th Cir.1987) (*citing Agnew* and giving the same definition for materiality of false oaths for purposes of criminal prosecutions under 18 U.S.C. § 152).

7. Five circuit courts of appeals have determined that a false oath regarding a worthless asset may constitute a material omission so as to prevent discharge in bankruptcy. *See Mertz v. Rott,* 955 F.2d 596 (8th Cir.1992) (discharge denied for debtor's failure to disclose his right to a $1,358.00 state tax refund, even though such refund may be exempt); *In re Calder,* 907 F.2d 953 (10th Cir.1990) (discharge denied for debtor's failure to disclose supposedly worthless bank accounts and mineral interests); *In re Chalik,* 748 F.2d 616 (11th Cir.1984) (discharge denied for debtor's failure to list his stock ownership of twelve supposedly worthless corporations); *In re Robinson,* 506 F.2d 1184 (2nd Cir.1974) (discharge denied under § 14(c) of the Bankruptcy Act); *In re Mascolo,* 505 F.2d 274 (1st Cir.1974) (same). *See also In re Martin,* 124 B.R. 542 (denying discharge when debtor concealed one bank account with a $100.00 balance and his transfer of various small personal items). "A recalci-

trant debtor may not escape a section 727(a)(4)(A) denial of discharge by asserting that the admittedly omitted ... information concerned a worthless business relationship or holding; such a defense is specious." *In re Calder*, 907 F.2d at 955, *quoting In re Chalik*, 748 F.2d at 618.

8. Furthermore, the Seventh Circuit has recently addressed this issue in *Matter of Yonikus*, 974 F.2d 901 (7th Cir.1992). In that case, debtor had a personal injury and workmen's compensation claim which arose pre-petition. He did not disclose these claims to his bankruptcy attorney and failed to report these claims on his bankruptcy schedules or at any other time during the pendency of his bankruptcy case. Several months after receiving a discharge, he received over $40,000.00 from the settlement of his personal injury and workmen's compensation claims. The trustee then moved to revoke debtor's discharge under § 727(d)(2) (the post-discharge equivalent to § 727(a)(4)(A)), and debtor defended on the grounds that the workmen's compensation award was exempt and the personal injury claim was property of his employer and not him.

9. The Seventh Circuit rejected debtor's arguments stating, "[d]ebtors have an absolute duty to report whatever interests they hold in property, even if they believe their assets are worthless or unavailable to the bankruptcy estate." *Id.* This is because "[t]he bankruptcy court, not the debtor, decides what property is exempt from the bankruptcy estate." *Id.* Section 522(1) of the Bankruptcy Code and Fed. R.Bankr. P. 4003 require debtors claiming exemptions to list the allegedly exempt property in their schedule of assets. The claims of exemptions are then open to scrutiny by the trustee and the court. *See id.* at n. 9.

> The bankruptcy process provides that the debtor must first list such property and claim such exemptions. Next, the trustee has an opportunity to review the claim for exemptions. Then, upon the trustee's objections, the bankruptcy court determines the legitimacy of the claim or, if the trustee has no objections, the exemption is then granted.

10. Debtors in Chapter 7 proceedings have an affirmative duty to disclose on their schedules of assets whatever ownership interest they hold in any property, inclusive of all legal and equitable interest in said property, as of the commencement of a bankruptcy case. *In re Martin*, 124 B.R. at 544; *In re Sofro*, 110 B.R. 989, 991 (Bankr.S.D.Fla.1990); *In re Burke*, 83 B.R. 716 (Bankr.D.N.D.1988). The purpose behind 11 U.S.C. § 727(a)(4) is to enforce debtors' duty of disclosure and to ensure that the debtor provides reliable information to those who have interest in the administration of the estate. *In re Tully*, 818 F.2d 106, 110 (1st Cir.1987); *In re Johnson*, 98 B.R. at 365. "Bankruptcy Trustees lack the time and resources to play detective and uncover all the assets and transactions of their debtors." *In re Martin*, 141 B.R. 986, 997 (Bankr.N.D.Ill.1992). Since § 727(a)(4) relates to the discovery of assets and enforces debtors' duty of disclosure, an omission can be material, even if the creditors were not prejudiced by the false statement. *In re Chalik*, 748 F.2d at 618; *In re Calder*, 93 B.R. 734, 738 (Bankr. D.Utah 1988), *aff'd Calder*, 907 F.2d 953; *In re Montgomery*, 86 B.R. at 957.

11. Allowing debtors the discretion to not report exempt or worthless property usurps the role of the trustee, creditors, and the court by denying them the opportunity to review the factual and legal basis of debtors' claims. It also permits dishonest debtors to shield questionable claims concerning an asset's value and status as an exemption from scrutiny. Therefore, the mere fact that unreported property is thought to be worthless or exempt is not a per se defense in a § 727(a)(4) action to bar discharge.

12. However, while the assertion that property is worthless or exempt is not a per se defense, it is a factor in determining materiality, and several courts have found minor omissions from debtors' schedules of assets to be immaterial. *See, e.g., In re Natale*, 136 B.R. 344 (Bankr. E.D.N.Y.1992) (debtor omitted two annuities worth an aggregate of $2,000.00); *In*

*re Woerner*, 66 B.R. 964 (Bankr.E.D.Pa. 1986) (debtor omitted a bank account with a balance of $98.85, camera and stereo equipment, and pension plans worth about $7,000.00); *In re Usoskin*, 56 B.R. 805 (Bankr.E.D.N.Y.1985) (debtor omitted three bank accounts with an aggregate balance of $7.00). In each of these cases, the courts found the omissions to be immaterial because of the small value of the omitted assets and their status as exempt property. *Natale*, 136 B.R. at 350; *Woerner*, 66 B.R. at 974; and *Usoskin*, 56 B.R. at 814.

13. This tendency is explained in *In re Dunbar*, 99 B.R. 320, 323 (Bankr.M.D.La. 1989):

> By requiring that an omission or untruth be "material," the courts are merely enforcing the persuasion that discharge not be denied on the basis of mere technicality or matters of form.... if a false oath can have no effect on the administration of the estate, it is difficult to impute fraudulent intent (as the false oath will doubtless be related simply to matters of technicality or form).

One factor which can be said to distinguish the cases denying discharge from the cases granting discharge is the presence of fraudulent intent by the debtor. In *Natale, Woerner*, and *Usoskin*, the debtors were all found to be honest people making simple errors. However, in *Martin*, the court found that the debtor's omissions were part of a pattern of conduct designed to shield his assets from his creditors. Likewise, in *Yonikus*, the debtor engaged in a series of transactions deliberately designed to shield his personal injury award from his creditors, and in *Chalik*, the debtor's omission of his interest in twelve corporations obscured from creditors the nature and extent of his pre-petition financial dealings. No cases have been found in which a debtor was found to have knowingly and fraudulently omitted an asset from his schedules, but was then granted a discharge because the asset was worthless or exempt.[1]

14. In the instant case, the Court will not enter judgment in favor of defendant merely because the value of the omitted assets are of negligible value or because the assets constitute exempt property. Instead, the size and status of the omitted assets will be considered in determining whether the omission was material and whether the omission was made knowingly and fraudulently.

15. The non-disclosure of Bailey's three accounts and his deposit with the Thrift Savings Plan constitute material omissions. The three accounts are not substantial assets, but they could have provided insight into how Bailey has disposed of his assets prior to filing his bankruptcy petition.

16. The deposit with the Thrift Savings Plan was Bailey's largest asset, and on the current record the Court cannot conclude as a matter of law that such a deposit constitutes exempt property under 11 U.S.C. §§ 541(c)(2) or 522. Since that was defendant's contention, it was also his burden. That burden was not met in the evidence. Labeling the Thrift account as an exempt retirement account does not make it so, and the failure to schedule it as exempt property underlines its materiality here. Furthermore, his omission deprived the Trustee and creditors of the right to examine the account and challenge his claim of exemption under Bankruptcy Rule 4003(b).

### Intent

17. The other issue is whether the omission of Bailey's omissions of the three accounts and the deposit with the Thrift Savings Plan were knowingly and fraudulently made.

18. To find the requisite degree of intent, the court must find that the defendant either knowingly and fraudulent-

---

1. This result is consistent with the overall purpose of § 727. This provision is "the heart of the fresh start provisions of the bankruptcy law." H.R.Rep. No. 595, 95th Cong., 1st Sess. 384 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5787, 6340. "Section 727 ... provides relief to the poor but honest debtor who has tried his best to pay his creditors and failed.... Section 727 is the vehicle through which the court can preclude abusive debtor conduct." *In re White*, 63 B.R. 742, 744 (Bankr.N.D.Ill.1986).

ly intended to defraud the Trustee or engaged in behavior which displayed a reckless and cavalier disregard for the truth. *Yonikus,* 974 F.2d 901; *Montgomery,* 86 B.R. at 957. People rarely if ever admit to committing fraud. Therefore, fraudulent intent may be proved by inferences drawn from debtor's course of conduct or from the surrounding circumstances. *Yonikus,* 974 F.2d 901; *In re Devers,* 759 F.2d 751, 753–54 (9th Cir.1985); *Matter of Reed,* 700 F.2d 986, 991 (5th Cir.1983); *Farmers Coop Assoc. of Talmage v. Strunk,* 671 F.2d 391, 395 (10th Cir.1982); *In re Kindorf,* 105 B.R. 685, 690 (Bankr.M.D.Fla.1989).

■ 19. Subsequent voluntary disclosure through testimony or an amendment to the schedules cannot expunge the falsity of an oath. *Montgomery,* 86 B.R. at 957. As explained in *In re Shebel,* 54 B.R. 199, 203 (Bankr.D.Vt.1985),

Section 727(a)(4)(A) does not provide for a grace period within which one can undo a false statement, made under penalty of perjury, by later declaring the truth. Nor is there any authority for the proposition that the amendment of a false statement requires the Court to pretend that the statement originally made was true.

However, subsequent disclosures are evidence of innocent intent. *Montgomery,* 86 B.R. at 957; *In re Glickman,* 64 B.R. 616, 618 (Bankr.S.D.Fla.1986), *citing In re Tabibian,* 289 F.2d 793, 797 (2nd Cir.1961). *See, e.g., In re Hirengen,* 112 B.R. 382, 385–86 (Bankr.D.Mont.1989) (debtors' disclosures at their § 341 meeting served as proof that the omissions on their schedules were not the result of fraudulent intent).

■ 20. Bailey turned over to plaintiff records of his checking account and his credit union account prior to the instant adversary action being filed. Debtor has answered all questions regarding his accounts, and there is no evidence that debtor ever intended to conceal those particular accounts. In fact, Bailey had a rational, albeit mistaken, basis for omitting these accounts. The debtor is correctly said to be a man who lived from paycheck to paycheck and accumulated nothing in his ac-

counts. Bailey considered the funds in these accounts as already spent and not as savings, so he did not list them on his schedules. Thus, the omission of the three accounts cannot be attributed to a fraudulent intent.

■ 21. However, the same cannot be said of the Thrift account which was not scheduled as exempt nor established by evidence to be exempt under the law. The debtor did list that he had unspecified retirement benefits without listing the nature or value thereof, but this listing referred to his participation in the Postal Service's retirement plan and not to the Thrift Savings Plan. His omission interfered with discovery by the Chapter 7 Trustee and creditors of assets, and had the effect of concealing assets.

22. Bailey knew of the size and existence of the Thrift account when his petition and schedules were being completed. While Bailey was not sophisticated in regards to finances, the questions asked of him in the schedules clearly called for him to disclose that account. Furthermore, Bailey had motive to conceal that account since it was his biggest asset, and he offered no credible explanation to show why he made no disclosure on his schedules. Therefore, the preponderance of evidence weighs in favor of finding knowing and fraudulent intent to conceal that asset.

23. Since the Court finds that Bailey knowingly and fraudulently omitted a material asset from his schedules, his discharge must be denied pursuant to § 727(a)(4)(A).

*Count II: 11 U.S.C. § 523(a)(2)(B)*

24. Bensenville Community Credit Union further maintains that this Court should determine that the debt in favor of the Union be non-dischargeable under 11 U.S.C. § 523(a)(2)(B), due to failure of defendant to disclose in his application with that Credit Union his child support obligations at the time that the auto loan was refinanced in April of 1990. In his bankruptcy schedules, defendant stated that his monthly child support obligation is $100.00.

In his 2004 examination, it is contended that he disclosed his monthly obligation as $180.00.

25. Count II could be dismissed as moot due to the Court's denial of discharge pursuant to § 727(a)(4)(A). *In re Lindley,* 121 B.R. 81, 90–91 (Bankr.N.D.Okl.1990). Since the debtor is denied discharge, there is nothing from which plaintiff's debt can be exempted. However, against the possibility of reversal by a higher court on Count I, the Court shall enter conclusions of law and judgment on the merits for this Count II.

26. 11 U.S.C. § 523(a)(2)(B) provides,

(a) A discharge under section 727 ... of this title does not discharge an individual debtor from any debt—

.     .     .     .     .

(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—

.     .     .     .     .

(B) use of a statement in writing—
(i) that is materially false;
(ii) respecting the debtor's ... financial condition;
(iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and
(iv) that the debtor caused to be made or published with intent to deceive....

27. To bar dischargeability of debt under § 523(a)(2)(B), plaintiff must be prove all four elements by a preponderance of evidence. *Grogan v. Garner,* 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991); *In re Stratton,* 140 B.R. 720, 722 (Bankr.N.D.Ill. 1992).

28. Debtor signed his loan application, but did not fill it out. It was filled out by plaintiff's officer, based on her oral questions to debtor at an interview. The preponderance of evidence does not establish that she expressly asked about child support and received a negative answer. Therefore, plaintiff has not met its burden to prove that Bailey caused his credit application to be filled out incorrectly with an intent to deceive plaintiff as to his financial condition.

29. The reasonableness of a creditor's reliance on financial information provided by a debtor must be judged by examining the particular facts and circumstances of each case. *Matter of Harasym-iw,* 895 F.2d 1170, 1173 (7th Cir.1990). Plaintiff cannot be said to have reasonably relied on Bailey's failure to volunteer information that was not expressly asked of him. Therefore, plaintiff did not establish that it reasonably relied on the non-disclosure of child support in the credit application.

30. Since plaintiff failed to meet its burden on two of the four elements of § 523(a)(2)(B), it is not entitled to have its debt exempted from discharge.

### CONCLUSION

For reasons set forth hereinbefore, judgment will be entered for plaintiff on Count I and for defendant on Count II. By separate order, plaintiff's counsel is directed to present separate draft judgment orders on the two counts in accord with the foregoing. Each judgment will provide that there is no just reason to delay enforcement or appeal.