In re Todd Andrew WILSON, Debtor.

**Gary T. Rafool, Plaintiff,**

v.

**Todd Andrew Wilson, Defendant.**

Bankruptcy No. 01–80946.
Adversary No. 01–8111.

United States Bankruptcy Court,
C.D. Illinois.

Feb. 27, 2002.

---

Spencer Lee Daniels, Gregg N. Grimsley, Peoria, IL, trustee.

Robert P. Follmer, Pontiac, IL, pro se.

Todd Andrew Wilson, Peoria, IL, pro se.

## *OPINION*

THOMAS L. PERKINS, Bankruptcy Judge.

This matter came before the Court for trial on the Complaint filed by the Chapter 7 Trustee, Gary T. Rafool, ("TRUSTEE") against the Debtor, Todd A. Wilson ("DEBTOR"), to deny his discharge. The TRUSTEE brings his complaint based upon three alternative theories under Sections 727(a)(2)(A), (a)(4)(A) and (a)(4)(D). Because the Court finds that the DEBTOR'S discharge should be denied under Section 727(a)(4)(A) based upon his failure to disclose a prepetition transfer of his interest in his house on the statement of financial affairs and at the first meeting of creditors, it is not necessary to address the TRUSTEE'S two alternative theories.

The DEBTOR is thirty-nine years old and has a tenth grade education. He is self-employed, engaged in the business of distributing snack items to various businesses, including the Fellheimer law firm in Pontiac, Illinois. The DEBTOR suffers from no disability, can read and write, but exhibited a below average ability to understand the questions asked at trial.

The DEBTOR and his wife, LaSonia R. Wilson, have four children and reside at 2307 W. Cindy Lane in Peoria, Illinois. They purchased their residence in 1998, taking title as joint tenants. After the DEBTOR defaulted under an asset purchase agreement, the sellers, Scott and Diane Weyeneth, sued the DEBTOR in state court for a substantial amount, in excess of $60,000. The DEBTOR was represented in that litigation by Robert M. Travers of the Fellheimer law firm. While the suit was pending, Mr. Travers referred the DEBTOR to attorney Ronald K. Fellheimer, the law firm's real estate specialist. On the advice of Mr. Fellheimer, the DEBTOR transferred his interest in the marital residence by warranty deed to his wife, LaSonia. The deed is dated January 8, 2001, and was recorded on January 16, 2001.

The deed was prepared by Ronald K. Fellheimer and was obtained by the DEBTOR during one of his regular visits to the firm on his snack route. The DEBTOR and his wife executed the deed in front of a notary public whom they knew and who was employed at Associated Bank in Peoria. The DEBTOR delivered the signed and notarized deed to the Fellheimer law firm, who saw to its recording. The DEBTOR testified that it was not his idea, but his lawyer's, to transfer his interest to his wife. Nevertheless, the DEBTOR understood that the purpose of the deed was to transfer title out of his name

jointly with his wife, into her name, solely, in order to shelter the house from the Weyeneths.

Rather than go to trial with the Weyeneths, the DEBTOR decided to file bankruptcy, which his lawyers had been suggesting for a few weeks. On or about March 7, 2001, the DEBTOR obtained blank copies of the statement of financial affairs and bankruptcy schedules, and took them home to fill out. Because he is "not very good with that kind of thing," the DEBTOR had his wife, LaSonia, fill in all of the required information on the statement of financial affairs and schedules. Both the DEBTOR and his wife testified that LaSonia filled in the information without consulting the DEBTOR or discussing it with him.

The DEBTOR returned the completed documents the next day to the Fellheimer law firm, where they were typed up in preparation for filing. The evidence at trial was not entirely clear as to when and where the DEBTOR actually signed the completed bankruptcy petition, statement of financial affairs and schedules. It is undisputed, however, that the DEBTOR did not sign any of the documents in blank. The documents were all completed when the DEBTOR signed them. It is also uncontroverted that at no time did the DEBTOR ever read the completed documents, even though the declarations attached to both the statement of financial affairs and the schedules provide that the DEBTOR declares under penalty of perjury that he read the documents and that they are true and correct to the best of his knowledge, information and belief. It is also undisputed that no one from the Fellheimer law firm discussed with the DEBTOR the information contained in his bankruptcy paperwork, either before or after the papers were filed.

Question 10 on the statement of financial affairs requires the debtor to "List all other property, other than property transferred in the ordinary course of the business or financial affairs of the debtor, transferred either absolutely or as security within one year immediately preceding the commencement of this case." On the DEBTOR'S statement of financial affairs, no property is listed under paragraph 10 and the box for "None" is filled in.

Because of a scheduling conflict, Robert P. Follmer, a bankruptcy attorney, was not able to appear with the DEBTOR at his first meeting of creditors. In his absence, he sent Mark A. Fellheimer, another attorney with the Fellheimer law firm, to appear with the DEBTOR at the first meeting. Mark A. Fellheimer is not a bankruptcy lawyer, knew nothing about the case, and did not meet with the DEBTOR before the meeting. Mr. Follmer testified at trial that neither he nor Mark A. Fellheimer was aware of the DEBTOR'S transfer of the real estate to his wife. The DEBTOR testified under oath at his first meeting of creditors as follows:

> Trustee: Did you sell, transfer or otherwise dispose of any real estate, furniture, cars or any other property in the last year? You have to answer.
>
> Mr. Wilson: No

Mr. Follmer testified that at the time of the transfer, the DEBTOR'S house was worth more than what was owed on the mortgage, but that the amount of equity was within the applicable Illinois Homestead Exemption.

After the TRUSTEE was advised of the transfer by a creditor, he filed a motion to extend the time for objecting to the DEBTOR'S discharge and obtained authorization to retain an attorney to avoid the transfer as fraudulent. The TRUSTEE subsequently determined, given the mort-

gage balance and the homestead exemption, that there was insufficient equity to justify pursuing the avoidance action. The TRUSTEE filed this adversary complaint objecting to the DEBTOR'S discharge and the Court held a trial on February 5, 2002, taking the matter under advisement.

**ANALYSIS**

■ The burden is on the TRUSTEE to prove, by a preponderance of the evidence, that a debtor's discharge should be denied under Section 727. *In re Scott,* 172 F.3d 959 (7th Cir.1999). Under Section 727(a)(4)(A), the court shall grant the debtor a discharge, unless

> (4) the debtor knowingly and fraudulently, in or in connection with the case—
>
> (A) made a false oath or account;

In order to prevail, the TRUSTEE must establish that:

1) The debtor made a statement under oath;
2) The statement was false;
3) The debtor knew the statement was false;
4) The debtor made the statement with the intent to deceive; and
5) The statement related materially to the bankruptcy case.

*In re Sholdra,* 249 F.3d 380 (5th Cir.2001); *In re Bailey,* 147 B.R. 157 (Bankr.N.D.Ill. 1992). A false oath may include a knowing and fraudulent omission. *In re Handel,* 266 B.R. 585 (Bankr.S.D.N.Y.2001). The DEBTOR concedes that his written statement of financial affairs and his testimony at the first meeting of creditors are statements under oath that were false because of the failure to disclose the real estate transfer. Accordingly, the TRUSTEE need only prove the third, fourth and fifth elements of the claim.

■ It is well established that the test for materiality of the subject matter of a false oath is whether it "bears a relationship to the bankrupt's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of his property." *In re Bailey,* 147 B.R. 157, 162 (Bankr. N.D.Ill.1992). The DEBTOR contends that because there was no equity in the house available for his creditors, his failure to disclose the transfer was not material.

■ As a general rule, the materiality of an omission is not lessened by the fact that the assets transferred may have been exempt. *Mertz v. Rott,* 955 F.2d 596 (8th Cir.1992); *In re Baldridge,* 256 B.R. 284 (Bankr.E.D.Ark.2000); *In re Prevatt,* 261 B.R. 54 (Bankr.M.D.Fla.2000); *In re Horton,* 252 B.R. 245 (Bankr.S.D.Ga.2000). A false oath may be material even though it does not result in any detriment or prejudice to the creditor. *In re Yonkers,* 219 B.R. 227, 234 (Bankr.N.D.Ill.1997). Since a debtor's claim of exemption is subject to objection and denial, full disclosure of all assets is required of debtors, including assets that are claimed as fully exempt. *Matter of Yonikus,* 974 F.2d 901, 904–05 (7th Cir.1992). Even assets that may be fully exempt bear a relationship to the debtor's estate and concern the existence of the debtor's property. *Mertz v. Rott,* 955 F.2d at 598. A failure to disclose an asset, exempt or not, is material unless the value of the asset itself is insubstantial. *Id.*

The DEBTOR relies upon *Matter of Agnew,* 818 F.2d 1284 (7th Cir.1987). In that case, the debtor and his spouse took out a second mortgage on the home they held as tenants by the entirety to fund a business venture of the debtor. After the business failed and judgments were taken against the debtor and his partner, the debtor and his wife sold their residence, having the proceeds of $28,295.77 issued solely to the

wife, who used the proceeds to build a house on property which she owned in her own name. Eleven months after the property was sold, the debtor filed a Chapter 7 petition. One of the debtor's business creditors objected to the debtor's discharge, alleging that the debtor transferred property within the year before the filing of the bankruptcy with the intent to hinder, delay or defraud a creditor.

Basing its decision on the particularities of Indiana's law of tenancy by the entirety, the court held that the debtor did not defraud his creditors as a matter of law. Relying on early Indiana case law defining the conveyance of one spouse's interest in a tenancy by the entirety to the other spouse to be a "release," the court held that no divided interest ever vested in the debtor which would be subject to the claims of his creditors. The court held that debtor's release of his interest in the proceeds of the sale of the house to his wife, during the twelve-month period prior to bankruptcy, was not a transfer with actual intent to defraud the complaining creditor because the creditor could never have had a claim to the asset in the first place. Because title to the house was held in tenancy by the entirety, it was exempt from execution by the husband's creditors before it was sold, and, under Indiana law, the proceeds from sale were also exempt. The court affirmed the denial of the creditor's objection to discharge under Section 727(a)(2)(A) of the Bankruptcy Code. 11 U.S.C. § 727(a)(2)(A).

The court then addressed the creditor's alternative argument under 727(a)(4)(A), that the debtor made a false oath when he did not report, in his statement of affairs, his release of the proceeds to his wife. Affirming the denial of the creditor's objection to discharge on this alternative basis as well, for lack of materiality, the court narrowed its holding as follows:

[The creditor's] sole argument that the omission related to a material matter is built on the premise that some part of the proceeds could have been reached by his creditors to satisfy his separate debts. The premise failing, its argument that the omission was material fails also.

818 F.2d at 1290.

Here, the TRUSTEE is not basing his argument, that the false oath made by the DEBTOR, in his schedules and at the first meeting of creditors, is material, on the theory that there was nonexempt equity in the DEBTOR'S house. To the contrary, the TRUSTEE contends that the omission of the transfer of the house is material even if there was no nonexempt equity available for the creditors. In *Bailey*, Bankruptcy Judge Jack B. Schmetterer conducted a thorough analysis of the materiality element of Section 727(a)(4), noting that five circuit courts of appeals have determined that a false oath regarding a worthless asset may constitute a material omission so as to deny discharge, and taking heed of the Seventh Circuit's admonition that "debtors have an absolute duty to report whatever interests they hold in property, even if they believe their assets are worthless or unavailable to the bankruptcy estate," because "the bankruptcy court, not the debtor, decides what property is exempt for the bankruptcy estate." *In re Bailey*, 147 B.R. at 163 (quoting from *Matter of Yonikus*, 974 F.2d 901 (7th Cir. 1992)). Judge Schmetterer continued his analysis as follows:

The purpose behind 11 U.S.C. § 727(a)(4) is to enforce debtors' duty of disclosure and to ensure that the debtor provides reliable information to those who have interest in the administration of the estate.... Since § 727(a)(4) relates to the discovery of assets and enforces debtors' duty of disclosure, an omission can be material, even if the

creditors were not prejudiced by the false statement.

Allowing debtors the discretion to not report exempt or worthless property usurps the role of the trustee, creditors, and the court by denying them the opportunity to review the factual and legal basis of debtors' claims. It also permits dishonest debtors to shield questionable claims concerning an asset's value and status as an exemption from scrutiny. Therefore, the mere fact that unreported property is thought to be worthless or exempt is not a per se defense in a § 727(a)(4) action to bar discharge.

However, while the assertion that property is worthless or exempt is not a per se defense, it is a factor in determining materiality, and several· courts have found minor omissions from debtors' schedules of assets to be immaterial. In each of these cases, the courts found the omissions to be immaterial because of the small value of the omitted assets and their status as exempt property. (Citations omitted).

This Court believes that the analysis of the role of materiality under Section 727(a)(4) as described by Judge Schmetterer in *Bailey* is correct, and the Court adopts that analysis for purposes of this case.

By not pursuing avoidance of the transfer, the TRUSTEE apparently determined that the value of the DEBTOR'S house was not sufficient, taking into account the mortgage balance and the necessary costs and attorney's fees, to justify bringing an avoidance action. Nevertheless, the DEBTOR'S house was his single most valuable asset. On his schedules, he listed no real estate and only $13,400 worth of personal property, $12,000 of which was attributable to a vehicle. Unlike *Agnew,* where the tenancy by the entirety served to protect the marital homestead from single-spouse creditors with no value ceiling, the DEBTOR'S ability to exempt his inter-est in his marital homestead held in joint tenancy is limited to $7,500 over and above the mortgage balance. Accordingly, the TRUSTEE here would have a significant interest in investigating the possibility that the DEBTOR had nonexempt equity in the house available for the benefit of creditors.

Where the DEBTOR held title to his house in joint tenancy, and transferred his interest to his wife two months before filing for bankruptcy protection, and where the house was his single most valuable asset, and where there was a significant question as to the existence of nonexempt equity, the Court holds that the DEBTOR'S failure to disclose the transfer on his statement of financial affairs and in response to a direct question from the TRUSTEE at his first meeting of creditors is "material" for purposes of Section 727(a)(4).

The DEBTOR also contends that the omission was not made with fraudulent intent. To find the requisite degree of intent, the court must find that the debtor either knowingly and fraudulently intended to defraud the trustee or engaged in behavior which displayed a reckless and cavalier disregard for the truth. *In re Bailey,* 147 B.R. at 164–65. Since people rarely admit to committing fraud, fraudulent intent may be proved by inferences drawn from the debtor's course of conduct or from the surrounding circumstances. *Id.* at 165. Although subsequent voluntary disclosure through testimony or an amendment to the schedules cannot expunge the falsity of an oath, subsequent disclosures are evidence of innocent intent. *Id.*

The facts concerning the transfer are undisputed. In response to the likelihood of a substantial judgment in favor of the Weyeneths, the DEBTOR'S lawyers recommended that he transfer his joint tenancy interest in his house to his wife, in an effort to shield it from a likely judgment

creditor. The DEBTOR understood that this was the purpose of the transfer and he understood that execution of the warranty deed by him and his wife in front of a notary public would accomplish this purpose. When he filed bankruptcy two short months later, on the eve of trial, there is no doubt that saving his house was still at the top of his list of priorities.

The DEBTOR voluntarily stuck his head in the sand with respect to preparation of the statement of financial affairs and bankruptcy schedules. He allowed his wife to prepare those critical documents without consulting him and he chose not to read them even though the completed papers were in his possession and available for his perusal. Debtors have the ultimate responsibility for the accuracy of the information contained in their schedules, which cannot be avoided by playing ostrich. *In re Leija,* 270 B.R. 497, 503 (Bankr. E.D.Cal.2001).

At his first meeting of creditors, the DEBTOR did not have the option of avoiding responsibility for the accuracy of the information given to the TRUSTEE. The DEBTOR was asked whether he transferred any property within one year prior to his bankruptcy filing and, under oath, he gave a false answer.[1] The DEBTOR knew the statement was false when he made it and, given the circumstances surrounding the prior transfer of his interest in his house, the Court concludes that the DEBTOR made the statement with an intent to defraud the TRUSTEE by concealing the transfer from the TRUSTEE.[2] Even if the statement was not made with an actual fraudulent intent, the DEBTOR clearly displayed a reckless and cavalier disregard for the truth by not reading or assisting in the preparation of his bankruptcy papers and by not disclosing the transfer in response to a direct question at his first meeting of creditors.

The Court finds that the TRUSTEE has proved each of the elements under Section 727(a)(4) and that the DEBTOR'S discharge should therefore be denied. Because denial of the discharge is granted under Section 727(a)(4)(A), it is not necessary for the Court to address the two alternative theories asserted by the TRUSTEE.

This Opinion constitutes this Court's findings of fact and conclusions of law in accordance with Federal Rule of Bankruptcy Procedure 7052. A separate Order will be entered.

---

1. The DEBTOR had an opportunity to defuse the false omission in his statement of financial affairs by correcting it through his testimony at the first meeting. Unfortunately, he made another bad choice and failed to take advantage of that opportunity.

2. Although the DEBTOR'S level of sophistication and understanding is below average, after viewing the DEBTOR'S testimony at trial, the Court has no doubt that the DEBTOR understood that the transfer should have been disclosed in response to the TRUSTEE'S question at the first meeting.